# Exhibit A

# WILMERHALE

July 10, 2017

**Matthew T. Jones**

+1 202 663 6018 (t)
+1 202 663 6363 (f)
matt.jones@wilmerhale.com

Joseph Palazzo
U.S. Department of Justice
1400 New York Avenue, NW
Washington, DC 20530

Thomas Gillice
U.S. Attorney's Office
555 4th Street, NW
Washington, DC 20530

**VIA E-MAIL AND FEDERAL EXPRESS**

*Re: United States v. Kassim Tajideen*, D.D.C. Case No. 17-cr-46 (RBW)

Dear Mr. Palazzo and Mr. Gillice:

As we have discussed, we are writing on behalf of our client, Kassim Tajideen, to request the production of all material to which Mr. Tajideen is entitled under Federal Rule of Criminal Procedure 16 and *Brady v. Maryland*, 373 U.S. 83 (1963).

Mr. Tajideen is charged with conspiring to defraud the Department of Treasury's Office of Foreign Assets Control ("OFAC") of its lawful government functions, conspiring to violate economic sanctions laws, and related offenses. The indictment alleges (at ¶2) that Mr. Tajideen "has been publicly designated by the United States Department of Treasury's Office of Foreign Assets Control ('OFAC') as a Specially Designated Global Terrorist ('SDGT')." According to the indictment, this designation is the result of OFAC's conclusion that Mr. Tajideen is "an important financial contributor to Hizballah" who has "contributed tens of millions of dollars to Hizballah." The indictment alleges (at ¶29) that Mr. Tajideen sought to defraud OFAC by concealing his financial dealings with individuals associated with terrorist organizations such as Hizballah.

The indictment (at ¶1) begins with a detailed description of terrorist attacks committed by Hizballah, to which the indictment alleges Mr. Tajideen is an "important financial contributor." The indictment states that Hizballah is a "Foreign Terrorist Organization" responsible for a series of terrorist attacks, including:

- "suicide truck bombings of the U.S. Embassy and U.S. Marine barracks in Beirut," as well as "the U.S. Embassy annex";
- "the 1985 hijacking of TWA flight 847, during which a U.S. Navy diver was murdered";
- "the kidnapping, detention, and murder of Americans and other Westerners in Lebanon";
- "the 1992 attacks on the Israeli Embassy in Argentina";

WILMERHALE

Joseph Palazzo
Thomas Gillice
July 10, 2017
Page 2

- "the 1994 bombing of the Argentine-Israeli Mutual Association in Buenos Aires";
- "the "capture[ of] three Israeli soldiers"; and
- "several terrorist plots around the world" since 2012.

At the core of the charges against Mr. Tajideen is his designation by OFAC, which—according to the indictment—renders unlawful otherwise lawful purchases from American companies. For this reason, Mr. Tajideen's OFAC designation is also discussed in Paragraphs 17, 18, 22, 23, 25, 43, and 45 of the indictment.

Beyond the sanctions violations, the indictment also alleges (at ¶¶27-29) that Mr. Tajideen sought to obstruct and interfere with OFAC's functions by misleading it about his business activities and financial dealings with individuals associated with terrorist organizations such as Hizballah. According to the indictment, Mr. Tajideen did not provide OFAC with a "complete picture" of his "financial holdings" (¶27), and he "endeavored to conceal relevant facts and circumstances regarding his business dealings and the companies under his control" from accountants who audited his businesses (¶28). It further alleges (at ¶29) that Mr. Tajideen "misrepresented to OFAC" that he had "refrain[ed] from any financial or commercial dealings with Ali Tajideen, Husayn Tajideen, and entities owned or controlled by these or any other individuals associated with any terrorist organization, such as Hizbollah."

Despite these charges in the indictment, the government has produced virtually no information regarding OFAC's designation of Mr. Tajideen, the indictment's allegation that Mr. Tajideen has contributed tens of millions of dollars to Hizballah, or the indictment's allegation that Mr. Tajideen has mispresented his financial dealings with terrorist organizations such as Hizballah. As you know, under Federal Rule of Criminal Procedure 16(a)(1)(E), the government must, upon request, permit the defendant to inspect any documents or other tangible items if "the item is material to preparing the defense." The "materiality standard normally 'is not a heavy burden,'" and "evidence is material as long as there is a strong indication that it will 'play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'" *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (citations omitted).

As the indictment makes clear, Mr. Tajideen's OFAC designation is a central issue in this case, such that documents relevant to the designation and related allegations are material to Mr. Tajideen's defense. *See United States v. Libby*, 429 F. Supp. 2d 1, 11 (D.D.C. 2006) (Walton, J.) (observing in the context of a motion to compel discovery of Rule 16 and *Brady* material that "a court must first start with the indictment when determining what is material, as the indictment delineates the evidence to which the defendant's case must respond"). Similarly, as Mr. Tajideen is charged with seeking to obstruct or interfere with OFAC's governmental functions

WILMERHALE

Joseph Palazzo
Thomas Gillice
July 10, 2017
Page 3

through misrepresentations, documents pertaining to OFAC's functioning in this matter (i.e., its review of and determinations on Mr. Tajideen's submissions in his delisting proceeding) and OFAC's internal understanding of Mr. Tajideen's representations are essential to his defense.

Separate and apart from Rule 16, we believe that the government is obligated to produce these materials under *Brady* as well. Any material tending to indicate that the purported link between Mr. Tajideen and Hizballah is dated, limited in nature, based on hearsay, based on information about family members of Mr. Tajideen rather than Mr. Tajideen personally, uncorroborated, or sourced from a competitor or some other person with possible bias against Mr. Tajideen is exculpatory as to the charges against him and must be produced. Any material in which OFAC personnel express doubt about whether it is lawful to designate or maintain the designation of Mr. Tajideen is exculpatory as to the conspiracy charge against him and must be produced. Material that undermines OFAC's previous actions or statements regarding Mr. Tajideen is also impeachment material as to any OFAC witness, who the government would presumably call in this case. Finally, to the extent the government intends to make any mention of Hizballah or Mr. Tajideen's status as an SDGT in any sentencing, the government is obligated to produce such material under *Brady* because it is material to his punishment.

Accordingly, we request that you provide the following documents and records in the government's possession, custody, or control:

1. All material relating to OFAC's designation of Mr. Tajideen and his companies as SDGTs, and the subsequent review of and determinations relating to Mr. Tajideen's delisting petitions, including the contents of any OFAC file relating to Mr. Tajideen.

2. All material, information, and statements tending to show or suggest that Mr. Tajideen endeavored to conceal facts and circumstances from OFAC, including any potential concealments relating to Mr. Tajideen's business dealings or his alleged association with Hizballah.

3. All material, information, and statements tending to show or suggest that Mr. Tajideen made materially false or incomplete statements to OFAC, including any potentially false or incomplete statements about remedial steps to seek and carry out divestment from entities affiliated with his brothers, Ali and Husayn Tajideen, or entities or individuals allegedly associated with Hizballah.

4. All material, information and statements tending to show or suggest that Mr. Tajideen and/or his companies did or did not provide support to Hizballah, including any material indicating that Mr. Tajideen, any of his brothers, or any of his companies is "an important

**WilmerHale**

Joseph Palazzo
Thomas Gillice
July 10, 2017
Page 4

    financial contributor to Hizballah," has "contributed tens of millions of dollars to Hizballah," or has contributed money or other things of value to Hizballah.

5. All material, information, and statements tending to show or suggest that Mr. Tajideen did not obstruct or interfere with OFAC's governmental functions, including material showing that he provided truthful information, undertook actions consistent with representations to OFAC, and offered to meet with or provide information to U.S. agents.

6. All material, information, and statements that tend to undermine OFAC's public statements regarding Mr. Tajideen.

    Based on our discussions over the past several weeks, we understand your position to be that OFAC documents regarding Mr. Tajideen's alleged support for Hizballah are irrelevant to the charges in the indictment and therefore are not discoverable. We respectfully request that you reconsider this position and let us know your views about this request as soon as possible. Even if you hold to your position that this material is irrelevant at trial, we request that you consider the government's independent obligation to produce these materials at sentencing.

    Though we would greatly prefer to resolve this matter without intervention by the Court, we intend to move the Court to compel production of the requested documents on July 17, 2017, if the government does not express its intent to produce them.

* * *

    On April 25, 2017, the government filed a First Notice of Compliance and Request for Reciprocal Discovery, which requested "[d]ocuments and tangible objects the defendant intends to introduce as evidence at trial," "[r]eports of examinations and tests the defendant intends to introduce at trial or that were prepared by a witness whom the defendants intends to call at trial," and "[a] written summary of the testimony of any expert the defendants intend to use at trial." Mr. Tajideen will provide reciprocal discovery following the government's satisfaction of its obligations under Federal Rule of Criminal Procedure 16(b). While the government has made ten productions containing millions of documents and other materials, it has not provided the critical sets of documents requested above. In addition, the government has yet to specify which of this evidence it intends to rely on in its case-in-chief, as required under Rule 16. *See United States v. Anderson*, 416 F. Supp. 2d 110, 115 (D.D.C. 2006) ("[F]or the intended reciprocity to be effectuated, the government must identify what it intends to rely on in its case-in-chief at trial before the defendant must identify what he intends to rely on in his.").

* * *

WILMERHALE

Joseph Palazzo
Thomas Gillice
July 10, 2017
Page 5

Thank you for your prompt attention to these issues.  We hope to hear from you soon.

Best,

*Matt Jones*

Matt Jones