**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § | Case No. 17-cr-0046 (RBW) |
| KASSIM TAJIDEEN, | § § | |
| Defendant. | § § § | |

**MOTION TO COMPEL DISCOVERY**

Defendant Kassim Tajideen, through counsel, hereby moves for an order compelling the government to produce all documents possessed by the Office of Foreign Assets Control (OFAC) relating to (1) its allegation that Mr. Tajideen provided financial support for Hizballah, (2) its designation of Mr. Tajideen as a Specially Designated Global Terrorist with whom U.S. persons could not do business, (3) whether Mr. Tajideen's subsequent statements to OFAC in the context of his delisting petitions were true or false, and (4) its consideration and denial of Mr. Tajideen's delisting petitions.  Rule 16 requires the government to produce these documents because they bear on allegations in the indictment and elements of the charged offenses and therefore are material to preparing Mr. Tajideen's defense.  To the extent these documents are favorable to Mr. Tajideen, the government has an additional obligation to produce them under *Brady v. Maryland*, 373 U.S. 83 (1963).

Mr. Tajideen previously filed a similar motion seeking OFAC documents, and the Court found the motion to be moot "given the government's representation that it intend[ed] to review" OFAC's internal files "and to produce any discoverable, including exculpatory, information contained within those files."  *See* Order, ECF No. 36.  Since that ruling however, the parties have conferred, and the government has clarified that it is *not* willing to produce the vast

majority of these materials.  The government's view is that these documents are irrelevant, and it reports that its position is final.  An order compelling production therefore is required.

Carefully-worded assurances by the government that it has *voluntarily* produced some documents are not sufficient.  Discovery is not voluntary, and it is not subject to government discretion.  Under Rule 16, the government must produce *all* documents material to preparing the defense, not just the ones of its own choosing.  An order from the Court specifying that the requested OFAC discovery is mandatory therefore is necessary.

## I.    SUMMARY OF ARGUMENT

Pursuant to Rule 16 and *Brady*, the government is required to produce materials in OFAC's possession relating to OFAC's initial designation of Mr. Tajideen as a Hizballah financer and its subsequent consideration and denial of his delisting petitions.  There are many reasons why:

(1) The indictment itself alleges that Mr. Tajideen "contributed tens of millions of dollars to Hizballah."   Indictment ¶ 2.  Information about any allegation in the indictment plainly is subject to discovery.

(2) Under the plain text of the applicable regulations, it is an essential element of the charges under the International Emergency Economic Powers Act (IEEPA) (Counts II through X) that the Treasury Secretary made a "determin[ation]" that Mr. Tajideen provided financial support to Hizballah and that the Secretary did so "in consultation with" three other federal agencies.   31 C.F.R. § 594.201(a)(4).  These elements may be the subject of dispute at trial. Information about whether OFAC actually made the required "determin[ation]" and/or whether OFAC did so "in consultation with" the specified agencies therefore is discoverable.

(3) It is an essential element of the charged conspiracy to defraud (Count I) that statements in Mr. Tajideen's submissions to OFAC were "deceptive."  Any OFAC material indicating that the statements were actually true—or that the government has decided they were false based on attenuated or otherwise unreliable proof— bears on this element, and the government must produce it under both *Brady* and Rule 16.  Likewise, OFAC material indicating that the statements were, in fact, deceptive also is relevant and must be produced under Rule 16.

(4) It also is an essential element of the charged conspiracy to defraud (Count I) that Mr. Tajideen conspired to obstruct a lawful government function.  *See*

Indictment ¶ 18(b). By statute, agency findings that are arbitrary or capricious are deemed unlawful. Thus, whether OFAC acted arbitrarily or capriciously in designating Mr. Tajideen as a funder of Hizballah and in refusing to rescind that designation is relevant to whether a lawful government function was at stake and thus to an essential element of the offense.

(5) Under *Brady*, Mr. Tajideen has a right to information that could be exculpatory at a sentencing, should there ever be one. In light of the allegations in the indictment, this includes information indicating that he is not, and has never been, a terrorism supporter. The government therefore is required to produce any information suggesting that OFAC's designation of Mr. Tajideen was based on false, nonexistent, contradicted, uncorroborated, attenuated, biased, or otherwise unreliable information. In order for Mr. Tajideen and his attorneys to fairly evaluate plea offers and whether to proceed to trial, this information must be produced now.

(6) Mr. Tajideen has a right to seek dismissal of the charges and a concomitant right to the information needed to evaluate and present those motions. *See Russell v. United States*, 369 U.S. 749, 768 n.15 (1962). This includes the right to file motions challenging the viability of the charges based on OFAC's conduct in designating Mr. Tajideen as a financer of terrorism. Absent the requested discovery, Mr. Tajideen is deprived of the means to even investigate, much less pursue, these arguments, and the Court is deprived of the opportunity to review them.

## II.   BACKGROUND

OFAC has promulgated regulations that prohibit U.S. persons, including U.S. companies, from doing business with any individual or entity that OFAC has designated as a Specially Designated Global Terrorist (SDGT). *See* 31 C.F.R. §§ 594.201, 594.204, 594.310. Under IEEPA, a willful violation of this prohibition is a crime. 50 U.S.C. § 1705(c).

In May 2009, OFAC designated Mr. Tajideen as an SDGT because he allegedly "contributed tens of millions of dollars to Hizballah." Indictment ¶ 2. OFAC did not disclose what this belief was based on. Nor has it since then. Because the allegation was untrue, Mr. Tajideen retained U.S. counsel to engage with OFAC, learn from OFAC why it believed he supported Hizballah, present contrary evidence, and petition OFAC to reverse his designation. Indeed, Mr. Tajideen had been falsely accused of financing a terrorist organization once before

(in Belgium) and, after extensive investigation, the authorities abandoned their pursuit of the accusation.

Over the course of several years, Mr. Tajideen and his U.S. counsel made many written submissions to OFAC as part of their effort to reverse OFAC's designation.  Then on March 7, 2017, while discussions between OFAC and Mr. Tajideen's counsel continued, the government obtained the indictment against Mr. Tajideen.  The charges are based on two sets of allegations:

First, the indictment alleges that Mr. Tajideen willfully violated OFAC's regulations (and hence IEEPA) by purchasing goods from American companies.  The indictment alleges that these purchases occurred at a time when Mr. Tajideen was on the OFAC list and, thus, at a time when U.S. companies were barred from doing business with him.  Although regulations criminalize only conduct by "U.S. persons," which Mr. Tajideen is not, the government's theory is that he can be prosecuted for "caus[ing]" – and conspiring to cause – U.S. persons to violate them.  Indictment ¶ 18(a) (Count I—conspiracy to violate IEEPA); *see also* Counts II–X (substantive IEEPA violations); Count XI (conspiracy to launder proceeds of IEEPA violations).

Second, the conspiracy count – in addition to alleging a conspiracy to violate IEEPA – alleges a conspiracy to defraud the United States.  It alleges that, during the course of Mr. Tajideen's discourse with OFAC, Mr. Tajideen made several misrepresentations to OFAC for the purpose of obstructing OFAC's consideration of his delisting petitions.  The subject matter of the alleged misrepresentations includes Mr. Tajideen's ties with associates and family members allegedly connected to Hizballah.  *See id.*  ¶¶ 18(b), 27–29.

Both of these theories make the requested OFAC documents relevant and discoverable.  Nevertheless, the government, for the most part, has not produced them.  It has produced communications between OFAC and Mr. Tajideen's counsel, which the defense already

possessed.  It has produced *publicly-available* OFAC materials, like a press release and excerpts from several public websites, which the defense also already had access to.  And it has produced one memo on the delisting proceedings, which has significant redactions, and one memo on the designation decision, which is virtually entirely redacted.  The defense already possessed these too, as the government has acknowledged, because OFAC itself had provided them in their heavily-redacted form during the delisting proceedings.  *See* Gov't Resp. to Def.'s Mot. to Compel ("Gov't Resp."), ECF No. 31, at 2 n.1.

The government appears to have withheld all other internal OFAC documents.  Indeed, as best as we can tell, it has not produced a single internal OFAC document that Mr. Tajideen did not possess prior to indictment.  Nor has the government produced a single OFAC document that shows the basis for its 2009 conclusion that Mr. Tajideen financed Hizballah.

## III.    LEGAL STANDARD

Federal Rule of Criminal Procedure 16(a)(1)(E)(i) directs the Government to disclose any item that is "material to preparing the defense."  "Rule 16 is intended to provide a criminal defendant the *widest possible opportunity* to inspect and receive such materials in the possession of the Government as may aid him in presenting his side of the case."  *United States v. Safavian*, 233 F.R.D. 12, 15 (D.D.C. 2005) (emphasis added) (internal quotation marks omitted). Demonstrating that evidence is "material" to preparing the defense is thus "not a heavy burden." *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993).  If a document in the government's possession bears on an element of a charged offense, it is well settled that the government must produce it.  *See United States v. Libby* (*Libby II*), 432 F. Supp. 2d 81, 84 (D.D.C. 2006).

Importantly, the government's Rule 16 obligations encompass *inculpatory* evidence as well as exculpatory evidence.  "Inculpatory evidence, after all, is just as likely to assist in 'the preparation of the defendant's defense' as exculpatory evidence."  *United States v. Marshall*, 132

F.3d 63, 67 (D.C. Cir. 1998) (quoting Rule 16(a)(1)(E)'s predecessor).  Indeed, "it is just as important to the preparation of a defense to know its potential pitfalls as it is to know its strengths."  *Id.*

In addition to – and separate from – these Rule 16 obligations, the government must produce evidence that is exculpatory, impeaching, or otherwise favorable to the defendant pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963).  *Brady* applies not only to evidence that would be favorable to the defense at trial but also to evidence that would be favorable at sentencing.  *Id.* at 87.  And the government's discovery obligations extend to any item that might impeach or otherwise show weakness in the government's evidence.  *Giglio v. United States*, 405 U.S. 150, 153–55 (1972).  Evidence that "mak[es] the government's case less credible" in any way is discoverable because, by virtue of that fact alone, "it enhances the defendant's chances of acquittal."  *In re Sealed Case No. 99-3096*, 185 F.3d 887, 893 (D.C. Cir. 1999).  Once it has identified evidence that is favorable to the accused, the government has no discretion under *Brady* regarding whether to produce it; favorable evidence "must be disclosed without regard to whether the failure to disclose it likely would affect the outcome of the upcoming trial." *Safavian*, 233 F.R.D. at 16.

The fact that information is classified has no bearing on whether it is discoverable under Rule 16(a) or *Brady*.  *See United States v. Mejia*, 448 F.3d 436, 455 (D.C. Cir. 2006).  Of course, if "otherwise discoverable" material would present national security concerns, the Government may seek redactions or substitutions through *ex parte* review pursuant to Rule 16(d)(1) and the Classified Information Procedures Act (CIPA), 18 U.S.C. App. III, § 4.  *United States v. Libby* (*Libby I*), 429 F. Supp. 2d 1, 16 n.25 (D.D.C. 2006).  But "CIPA is implicated *only after* the Court has resolved questions" of discoverability.  *Id.* (emphasis added).

## IV.    THE GOVERNMENT MUST PRODUCE THE REQUESTED OFAC DOCUMENTS REGARDING MR. TAJIDEEN

The government implicitly asserts a sweeping exemption from ordinary principles of criminal discovery for OFAC records.  But no such exemption is justified or permissible when the government brings a criminal prosecution that necessarily depends on what OFAC has done and on the defendant's interactions with OFAC.

### A.    The OFAC documents bear on particular allegations in the indictment.

Under Rule 16, "a court must first start with the indictment when determining what is material, as the indictment delineates the evidence to which the defendant's case must respond." *Libby I*, 429 F. Supp. 2d at 7.  The indictment in this case specifically alleges that Mr. Tajideen is "an *important financial contributor to Hizballah* who operates a network of businesses in Lebanon and Africa, and who has *contributed tens of millions of dollars to Hizballah*."  *Id.* ¶ 2 (emphasis added).  OFAC possesses information on this allegation, as it formed the basis for OFAC's decision to designate Mr. Tajideen as an SDGT.  Having included this allegation in the indictment and having filed no motion to strike it in the nine months since the indictment was returned, Rule 16 mandates that the government produce all documents in its possession that support or undermine it, including all documents on the subject possessed by OFAC.  *See Libby I*, 429 F. Supp. 2d at 7.  If any such documents are favorable to Mr. Tajideen, then the government has a separate and independent obligation to produce them under *Brady* as well.

### B.    The OFAC documents bear on essential elements of the IEEPA offenses.

As noted above, Rule 16 directs the government to produce any item that is material to preparing the defense, and this includes any document that bears on an element of a charged offense.  *See* Fed. R. Crim. P. 16(a)(1)(E)(i); *Libby II*, 432 F. Supp. 2d at 84.

-7-

Here, OFAC's files related to its decision to designate Mr. Tajideen as an SDGT are relevant to particular elements of the IEEPA offenses charged in Counts II through X. The elements of those offenses, in relevant part, are set forth in two regulations, both of which are cited in the indictment as a basis of the charges.[1] The first regulation states that "no U.S. person may engage in any transaction or dealing in property or interests in property of persons whose property and interests in property are blocked pursuant to § 594.201(a)." 31 C.F.R. § 594.204. Section 594.201(a), in turn, states that a person's property is "blocked" if he or she is:

> determined by the Secretary of the Treasury, in consultation with the Secretary of State, the Secretary of Homeland Security and the Attorney General . . . [t]o assist in, sponsor, or provide financial, material, or technological support for, or financial or other services to or in support of . . . [a]ny person whose property or interests in property are blocked [such as Hizballah]."

31 C.F.R. § 594.201(a)(4)(i).

Thus, the essential elements of the IEEPA offenses alleged against Mr. Tajideen include (1) that OFAC "determined" that Mr. Tajideen "provide[d] financial . . . support for" another blocked person (here, Hizballah), and (2) that OFAC made that determination "in consultation with the Secretary of State, the Secretary of Homeland Security and the Attorney General." *Id.* These are facts that the government must prove beyond a reasonable doubt and that the defense is entitled to contest at trial.

OFAC's documents on Mr. Tajideen's designation therefore go to essential elements of the IEEPA offenses, and the government must produce them under Rule 16. Mr. Tajideen is entitled to defend himself by introducing documents and/or examining witnesses to show that OFAC (as the Secretary of the Treasury's delegate) did not make the requisite determination or did not consult with the requisite agencies. He is equally entitled to put the government to its

---

[1] Additional elements of the IEEPA offenses are set forth in the statute itself. *See* 50 U.S.C. § 1705(c) (imposing criminal penalties on those who "willfully" violate the regulations).

burden as to these elements.  He also is entitled to evaluate the "potential pitfalls" of such a defense.  But he cannot do any of this without the documents possessed by OFAC that bear on these issues, which Rule 16 requires the government to produce.[2]

Moreover, if any of these documents cast doubt on whether OFAC made the necessary determination or whether it did so in consultation with the specified agencies, they are favorable to Mr. Tajideen and must be produced not only under Rule 16, but also under *Brady*.

### C.   The OFAC documents bear on essential elements of the alleged conspiracy to defraud.

In relevant part, Count I charges Mr. Tajideen with conspiring "to defraud the United States Government by interfering with and obstructing a lawful government function." Indictment ¶ 18(b); *see also* 18 U.S.C. § 371.  To establish that Mr. Tajideen conspired to defraud the United States, "the government ha[s] to prove that he knowingly agreed with [another person] . . . to deceptively interfere with the lawful functions of [OFAC]."  *United States v. Davis*, 863 F.3d 894, 901 (D.C. Cir. 2017).  The elements of this offense are that the defendant "(1) entered into an agreement (2) to obstruct a lawful government function (3) by deceitful or dishonest means and (4) committed at least one overt act in furtherance of the conspiracy."  *United States v. Conti*, 804 F.3d 977, 979–80 (9th Cir. 2015)  Mr. Tajideen needs OFAC documents to prepare his defense to the "deceitful or dishonest means" and "lawful function" elements of this offense.

---

[2] The Government cannot silence all dispute as to whether OFAC made the requisite determination simply by pointing to a Federal Register notice stating that Mr. Tajideen is "designated" as an SDGT.  *See* Aug. 28, 2017, Hrg. Tr. at 7 (government counsel stating that "[w]e would enter the Federal Register notice into evidence").  The Federal Register notice is just one item of potential evidence; Rule 16 provides that a defendant is entitled to *all* of the evidence possessed by the government on a relevant issue.  Indeed, Mr. Tajideen would be entitled to try to rebut the Federal Register notice if it were admitted.  He cannot even evaluate whether and how to do so, however, absent discovery of the underlying OFAC documents.

### 1.     Deceitful or Dishonest Means

To substantiate the conspiracy to defraud charge, the Government alleges that Mr. Tajideen made three misrepresentations in his submissions to OFAC in his effort to persuade it to delist him:

- that a particular document contained "a complete picture" of his "financial holdings," Indictment ¶ 27;

- that an audit represented "an unimpeded, objective view into Mr. Tajideen's life and business," *id.* ¶ 28; and

- that he had taken the step of "[f]ormally divesting from entities affiliated with his brother, Ali Tajideen, and refraining from any financial or commercial dealings with Ali Tajideen, Husayn Tajideen, and entities owned or controlled by these or any other individuals associated with any terrorist organization, such as Hizbollah." *Id.* ¶ 29.

*See also* Gov't Resp. at 4 ("The government will prove that, as overt acts in furtherance of his conspiracy . . . to defraud the government, the defendant made false statements in his filings to OFAC."). OFAC rejected the delisting petition in which these statements were made, reasoning in part that OFAC "d[id] not find Kassim Tajideen's claims . . . to be credible." Sept. 4, 2015, Letter from OFAC to WilmerHale. OFAC's files, therefore, presumably contain information that supports and/or refutes the Government's contention that Mr. Tajideen's statements were false. The government cannot simply "present *independent* evidence to prove . . . the falsity of those statements," as it proposed in its earlier briefing, in order to avoid producing material in OFAC's files that bears one way or the other on this essential element of the offense. Gov't Resp. at 4 (emphasis added).

OFAC's files may assist the defense in establishing that Mr. Tajideen's statements were truthful or in establishing reasonable doubt that they were deceptive. Conversely, the files may assist Mr. Tajideen in identifying "potential pitfalls" in his defense. Either way, given that OFAC documents on this subject bear on an element of the charged conspiracy to defraud, the

defense is entitled to discovery of all OFAC documents on this issue under Rule 16.  If any such documents cast doubt on the government's position that the statements were deceptive, the government must produce them under *Brady* as well.

### 2.    Lawful Government Function

OFAC's files also may contain documents that bear on the "lawful function" element of the alleged conspiracy to defraud.  The government alleges that Mr. Tajideen conspired to use the statements described above to persuade OFAC to delist him and thereby to impede a lawful government function – namely, OFAC's "enforcement of laws and regulations prohibiting dealing with SDGTs or in blocked property."  Indictment ¶ 18(b).  But if Mr. Tajideen's SDGT designation or delisting proceedings were conducted arbitrarily or capriciously or were unsupported by evidence, they are, by statute, "unlawful."  5 U.S.C. § 706(2); *see also, e.g.*, *Epsilon Electronics, Inc. v. OFAC*, 857 F.3d 913, 927–29 (D.C. Cir. 2017) (setting aside as unlawful OFAC's finding that transactions violated a sanctions regulation).

The government bears the burden of proving that OFAC was engaged in a "lawful" function and, conversely, Mr. Tajideen has the right to contest it.  OFAC's files on its designation of Mr. Tajideen and its denial of his delisting petition bear directly on this element of the charged conspiracy, and Mr. Tajideen is entitled to them under Rule 16.  Once again, if the documents undercut the government's position on this element or otherwise are favorable to Mr. Tajideen's position, then they also must be produced under *Brady*.

### D.    The OFAC documents bear on punishment.

It is well-settled that the Government's *Brady* obligations extend to favorable evidence that is "material either to guilt *or to punishment*."  *Brady*, 373 U.S. at 87 (emphasis added). Accordingly, the withholding of evidence "favorable to the accused and material to his

sentencing" constitutes a *Brady* violation.   *United States v. Quinn*, 537 F. Supp. 2d 99, 117 (D.D.C. 2008).

If the Court ever were to sentence Mr. Tajideen, it will be required to fashion a sentence that takes into account "the nature and circumstances of the offense and the history and characteristics of the defendant."   18 U.S.C. § 3553(a)(1).   Even if the government does not affirmatively ask the Court to take into account the purported conduct underlying the SDGT designation, it already is before the Court due to the very nature the charges.   The Court's task at a sentencing very well may be different if it sees Mr. Tajideen not as "an important financial contributor to Hizballah," Indictment ¶ 2, but rather as a legitimate businessman who was wrongly accused of supporting terrorism and who allegedly committed violations of highly-technical U.S. regulations while facing wrongly-imposed sanctions that were harming his businesses.   And such a narrative is hardly fanciful.   Mr. Tajideen was falsely accused of financing a terrorist organization once before.   After extensive investigation, Belgian authorities abandoned their pursuit of that allegation.

At a sentencing, Mr. Tajideen would have the undisputed right to argue – and present evidence to the Court – that he is entitled to a low-end sentence, if not a downward variance, on the ground that his designation as an SDGT was unsupported and that any offense of conviction was harmless to the national security interests of the United States.   He would be entitled to argue that he deserves leniency because the offense involved no more than wrongful purchases of frozen food.   Any evidence in OFAC's files that tends to undermine Mr. Tajideen's alleged support for Hizballah is thus "favorable" to him in the sentencing context.   This includes but is not limited to:

- Any material indicating that Mr. Tajideen did *not* support Hizballah;

- Any material indicating that any information linking Mr. Tajideen to Hizballah is hearsay-based or otherwise attenuated;

- Any material indicating that any information linking Mr. Tajideen to Hizballah was uncorroborated;

- Any material indicating that any information linking Mr. Tajideen to Hizballah came from Mr. Tajideen's business competitors;

- Any material indicating that any information linking Mr. Tajideen to Hizballah came from persons of unknown identity or who could not be located;

- Any material showing that any information linking Mr. Tajideen to Hizballah came from mere news reports.

The list could go on. Without access to OFAC's files and any favorable material they might contain, Mr. Tajideen could be faced with "an accumulation of uncorroborated suspicions" regarding an issue that could significantly affect his punishment without the means to defend himself—a potential due process violation. *United States v. Lemon*, 723 F.2d 922, 941 (D.C. Cir. 1983).

It does not matter that *the government* may elect not to raise Hizballah at sentencing. Given the nature of the charges, the defense has an indisputable right to raise it itself. The defense therefore has the right to obtain discovery on this subject.

Critically, this discovery must be supplied now. It cannot be deferred. Counsel has a Sixth Amendment obligation to properly advise Mr. Tajideen regarding the consequences of proceeding to trial and/or considering a plea bargain. *See, e.g.*, *Padilla v. Kentucky*, 559 U.S. 356, 360 (2010). The truth or falsity of the basis for Mr. Tajideen's designation could be such an important factor in sentencing that counsel cannot meaningfully assess any plea offer without discovery on the issue. As the D.C. Circuit has recognized, "the discovery obligations mandated by Rule 16 contribute[] to the fair and efficient administration of criminal justice by providing the defendant *with enough information to make an informed decision as to plea*." *Marshall*, 132

F.3d at 68 (emphasis added).  This requires the government to provide now the discovery to which Mr. Tajideen would be entitled at sentencing.

      **E.**      **The OFAC documents bear on possible dismissal motions.**

Finally, Federal Rule of Criminal Procedure 12 entitles a defendant to file pretrial motions raising "any defense, objection, or request that the court can determine without a trial on the merits."  Mr. Tajideen has a concomitant right to information needed to evaluate and, if appropriate, advance such motions.  As the Supreme Court held in *Russell v. United States*, the district court itself must have information sufficient "to enable [it] to decide whether the facts alleged are sufficient in law to withstand a motion to dismiss the indictment."  369 U.S. 749, 768 n.15 (1962).  While *Russell* addressed missing content in an indictment, its reasoning applies with equal force to missing discovery.

For this reason as well, Mr. Tajideen is entitled to OFAC's files on him.  The charges against Mr. Tajideen find their basis in OFAC's designation of him as an SDGT, and the defense suspects that the designation is illegitimate.  It seeks to consider whether the government's use of it to prosecute Mr. Tajideen may violate various First Amendment, Equal Protection and/or Due Process rights.  Without the requested discovery, however, the defense cannot evaluate – much less assert – these and other potential grounds for seeking dismissal of the charges, and judicial review of any such grounds for dismissal is altogether precluded.

Mr. Tajideen is faced with an indictment premised on an SDGT designation that is a black box.  Without discovery into how OFAC arrived at its decision to designate him and how OFAC evaluated his delisting petitions, Mr. Tajideen cannot possibly assess what defenses may be available to him in challenging the indictment.  This not only curtails his right to challenge the charges against him, it infringes on his right to effective assistance of counsel.  *See Rompilla v. Beard*, 545 U.S. 374, 377 (2005).

-14-

**V.      AN ORDER IS NECESSARY TO ENSURE CLARITY AND COMPLETENESS**

To date, the government has sought to stave off a ruling on the discoverability of these OFAC documents.  It has sought to do so by making assurances that it will *voluntarily* produce some of the requested documents, even though it believes that they are neither relevant nor discoverable.  *See* Letter of Dec. 14, 2017, at 3 n.1; Gov't Resp. at 4 n.2; Aug. 28, 2017, Hrg. Tr. at 13.  In the absence of a court order, this approach has afforded the government discretion to produce what it wants and to withhold what it wants and thus to define for itself the scope of discovery.

This is underscored by a letter the government sent to the defense in anticipation of this motion.  *See* Letter of Dec. 14, 2017 (attached as Ex. A).  The letter suggests that discovery is proceeding smoothly when, in fact, it is not.

First, the government's letter points out that the government has produced a great volume of documents.  While this is true, it is irrelevant.  The government has produced only two internal OFAC documents pertinent to the issues discussed in this motion.  Both are heavily redacted (indeed, one of them contains no meaningful information at all).  And both of these heavily-redacted memos already had been provided to Mr. Tajideen by OFAC well before indictment, when he petitioned for delisting.  The government not only has withheld the redacted portions of these documents, it appears to have withheld all other internal OFAC documents.  Indeed, it appears not to have produced a single OFAC document that Mr. Tajideen did not possess prior to indictment, and it has not, at any time, produced a single OFAC document that shows the basis for its conclusion that Mr. Tajideen financed Hizballah.  That the government has produced millions of pages of *other* documents on *other* issues is immaterial.

Second, the letter includes a carefully-worded sentence to suggest that the government is producing some of the documents in question.  The letter states that the government agrees to

produce "available unclassified and nonprivileged portions of OFACs files which support Mr. Tajideen's designation by OFAC and OFAC's denial of Mr. Tajideen's petition for delisting . . . ." Ex. A at 3 (Item No. 7). While worded to offer comfort, this assurance provides nothing of the sort. The government states that it will only produce documents possessed by OFAC that "support" its position and not any of its documents that do not. *Id.* It states that it is withholding documents that it deems to be classified or privileged, without indicting what – if any – process it intends to follow to permit judicial review of these determinations. *Id.* It appears, at times, to limit its agreement to "available" files, whatever that may mean. And most worrisome, it states in a footnote that it does not deem the documents to be relevant (and thus, by implication, subject to mandatory discovery). *Id.* at n.1. In other words, the government takes the position that what it produces from this universe – and likewise what it withholds – is subject to its own discretion. It is not remotely surprising that the government's supposed agreement to produce these documents has yielded only two internal OFAC documents, both of which are heavily redacted and both of which were produced to Mr. Tajideen years ago in the delisting proceedings.

Finally, the government's letter obscures its ultimate position that the requested material is irrelevant and thus non-discoverable. Rather than saying so directly, the government states in a single sentence on the last page of its letter that its position is contained in an altogether separate document – namely, in the response it filed to Mr. Tajideen's prior motion on this subject. *See* Ex. A at 9. That filing, of course, made clear that in the government's view, "OFAC's files and other internal documents are not otherwise relevant to the charges in this case and are therefore not discoverable." Gov't Resp. at 17 (header formatting omitted).

The discovery sought in this motion is not subject to government discretion or game playing. It is mandatory. Given the qualifications the government has attached to its assurances

of a voluntary production and the tiny volume of internal OFAC documents that it actually has produced, an order to this effect is necessary.

## VI.   CONCLUSION

For these reasons, Mr. Tajideen respectfully seeks an order requiring the government to produce all material in OFAC's files relating to: (1) its allegation that Mr. Tajideen provided financial support for Hizballah, (2) its designation of Mr. Tajideen as a Specially Designated Global Terrorist with whom U.S. persons could not do business, (3) whether Mr. Tajideen's subsequent statements to OFAC in the context of his delisting petition were true or false, and (4) its consideration and denial of Mr. Tajideen's delisting petition.  As explained above, any OFAC documents in these categories are discoverable under Rule 16 because they are "material to preparing the defense."  This is so even for documents, if any, that are inculpatory.  If any documents in these categories are *ex*culpatory, then they are also discoverable under *Brady*.[3]

The Court's order should clarify that, while the Government may seek to invoke the procedures set forth in CIPA where applicable, it may not *unilaterally* withhold or redact Rule 16 or *Brady* material on the grounds that it is classified.  It must involve the Court, if not the defense as well, through proper CIPA procedures.  The order should further clarify that, to the extent the government seeks to withhold any material on privilege grounds, it must provide the defense

---

[3]  To be clear, this motion concerns discoverability, not admissibility.  Mr. Tajideen reserves all of his rights to seek the exclusion of any evidence or testimony from OFAC, including under Federal Rule of Evidence 403, and to seek appropriate stipulations.  *See Old Chief v. United States*, 519 U.S. 172 (1997).  The defense cannot even evaluate admissibility issues or potential stipulations without reviewing OFAC's documents on the relevant subjects.

with an appropriate log and/or affidavit, identifying each withheld document, the privilege being

claimed, and sufficient information about the document to show the basis for the claim.


Dated: January 4, 2018                              Respectfully submitted,


                                                    /s/ Eric R. Delinsky
                                          _____
                                          William W. Taylor, III (D.C. Bar No. 84194)
                                          Eric R. Delinsky (D.C. Bar No. 460958)
                                          ZUCKERMAN SPAEDER LLP
                                          1800 M Street N.W. Suite 1000
                                          Washington, D.C. 20036
                                          Tel: (202) 778-1800
                                          Fax: (202) 822-8106
                                          E-mail: wtaylor@zuckerman.com
                                          E-mail: edelinsky@zuckerman.com

                                          Paul G. Cassell (Utah Bar No. 6078)
                                          S.J. Quinney College of Law, Univ. of Utah[4]
                                          383 S. University Street
                                          Salt Lake City, UT 84112-0730
                                          Tel: (801) 585-5202
                                          Fax: (801) 585-2750
                                          E-mail: cassellp@law.utah.edu

                                          *Attorneys for Defendant Kassim Tajideen*



## CERTIFICATE OF SERVICE

        I HEREBY CERTIFY that on January 4, 2018, the foregoing was filed with the Court's

CM/ECF Service.


                                          _____/s/ Eric R. Delinsky_____
                                          Eric R. Delinsky

---

[4] This address is provided for identification and contact purposes only and is not intended to imply institutional endorsement for this private representation.