## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 17-CR- 46 (RBW)** |
| | : | |
| **KASSIM TAJIDEEN,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S OPPOSITION TO
## DEFENDANT'S SECOND MOTION FOR PRETRIAL RELEASE

The United States, by and through the undersigned attorneys, respectfully opposes the Defendant's Motion for Pretrial Release. The defendant moved previously for pretrial release, and the Court denied the motion. Dkt. 24, pp. 26-27. Since the factors supporting the defendant's detention remain unchanged since the Court's prior ruling on this issue, and the defendant presents no new facts or changed circumstances, the defendant's instant motion should be denied. *Compare* Dkt. 20 *with* Dkt. 58.

The Court has determined that the government has demonstrated by substantially more than a preponderance of the evidence that the defendant poses a significant risk of flight and therefore ordered the defendant detained pending trial. *See* 18. U.S.C. § 3142(g); *see also* United States v. Xulam, 84 F.3d 441, 442 (D.C. Cir. 1996). Here, the defendant remains charged with, *inter alia*, violating the International Emergency Economic Powers Act ("IEEPA") and numerous counts of money laundering; these charges are based on the defendant's illegal business dealings with U.S. persons since his 2009 Specially Designated Global Terrorist designation by the U.S. Department of the Treasury. These charges carry criminal penalties of up to 20 years of incarceration. In addition, the government estimates a Sentencing Guidelines Range of well over 10 years of incarceration should the defendant be convicted on all charges in

the Indictment.  The potential lengthy sentence, the defendant's excessive wealth, his negligible

ties to the United States (other than his illegal business dealings) and the fact that he does not

have legal status in the United States, his foreign citizenship from at least one country with which

the United States has no extradition treaty, his prior foreign felony conviction related to forgery

of documents, support the government's position that the defendant is a substantial risk of

flight and that there are no conditions or combination of conditions that can reasonably

assure the defendant's presence for trial in this matter.

In juxtaposition to the factors above, the defendant presently presents a set of conditions

as trustworthy to ensure the defendant's presence at trial.  However, the Court has already

rejected essentially these exact conditions.  In the instant motion (Dkt. 58), the defendant again

suggests that the Court release him to an apartment that he would rent, guarded by persons he

would hire (although he names a different security company), while posting a $2 million dollar

bond. In addition, the defendant indicates that a relative in the United States is now willing to

offer a house as collateral. Because the defendant posits no significant change in circumstances

since the Court last visited his detention status, and because the defendant remains a risk of flight,

the government opposes the defendant's renewed Motion for Pretrial Release.

## RELEVANT PROCEDURAL HISTORY

On March 7, 2017, after a Drug Enforcement Administration ("DEA") investigation

spanning a period of years, a grand jury in the District of Columbia issued an Indictment charging

the defendant with violations of the IEEPA the Global Terrorism Sanctions Regulations ("GTSR"),

as well as conspiracy and money laundering statutes.  Foreign authorities apprehended the

defendant overseas on approximately March 12, 2017, and DEA agents thereafter transported him

to the United States.  The defendant was presented in the District of Columbia on March 24, 2017,

and was held without bond at the request of the government.  A detention hearing was set to occur on March 29, 2017, but the defendant filed a notice conceding detention and waiving any written factual findings, so no hearing was held.  The defendant remains held without bond.

On May 5, 2017, defense counsel submitted a Motion for Pretrial Release (Dkt. 20) alleging that the defendant was not a risk of flight.  Further, the defendant alleged that the detention facility in which he was housed failed to provide adequate medical attention or to accommodate the defendant's dietary and religious needs. To ameliorate these alleged conditions, and because of their claim that the defendant was not a risk of flight, defense counsel suggested that home confinement at an apartment or home that he would obtain, supplemented by 24-hour GPS monitoring, equipped with a 24-hour armed security detail and video and electronic monitoring, along with a $2 million bond would accommodate his needs and assure the presence of the defendant in Court. His motion set forth the many qualifications of the security company the defendant proposed to hire to guard him if released by the Court.

The government opposed the defendant's motion, and filed its Opposition to Defendant's Motion for Pretrial Release on May 15, 2017.  *See* Dkt. 22.  The government incorporates the contents of that Opposition herein in their entirety.  In its prior opposition, the government made the point that "[t]he defendant is an extremely wealthy businessman with vast overseas holdings, a foreign criminal record, multiple known foreign citizenships, no ties to the community or to the United States (aside from his illegal business dealings), and a history of using fake documents."  *See* Gov't's Opposition to Def's Mtn for Pretrial Release Dkt. 22 at 1.  In addition, the government's Opposition expanded on each of the following points:

- The nature and circumstances of the Offenses charged are serious, in that they relate to U.S. efforts to reduce the flow of resources to Foreign Terrorist Organizations, and

that seriousness is reflected in the Sentencing Guidelines likely applicable should the defendant be convicted at trial, which the government estimates to be a range of 151-188 months of incarceration. *See id.* at 5;

- The weight of the evidence against the defendant is strong, in that it involves writings and recorded statements made by the defendant himself and his filings with OFAC, as well as extensive records documenting the transactions charged in the indictment; *See id.* at 5-6;

- The history and characteristics of the defendant militating against his release include:

  o At that time, the defendant alleged no ties to the United States, nor was the government aware of any.  The government's opposition made the point that the defendant was not a U.S. citizen, who had been prohibited from traveling to the U.S. since his designation by OFAC in 2009 and who has no legal status in the U.S., since the Department of Homeland Security allowed the defendant to enter the country solely for purposes of his prosecution.  At the time, the government alleged –and the defendant did not dispute – that his only ties to the United States were through civil and criminal court proceedings.  *See id.* at 7;

  o At the same time, the government argued the defendant's foreign ties were immense, in that he was a citizen of three different countries (Belgium, Sierra Leone and Lebanon) and owned or directed businesses in several other countries. In addition, the government noted that the defendant's Lebanese passport is not in the government's possession, and that the defendant's home country of Lebanon has no extradition treaty with the United States. The

government's opposition also pointed out the defendant need not even escape the country to avoid prosecution, since each of the three countries from which he obtained a passport has an embassy in the United States at which he could attempt to avoid prosecution.  *See id*.;

o  The defendant's 2002 criminal convictions in Belgium, for leadership in a criminal organization and money laundering, related to a scheme wherein the defendant used forged documents to avoid tariffs on exported goods, making it clear that he is comfortable dealing with faked documents,  and that the conflicting accounts of the defendant's place of birth amongst his three passports - two indicate his birth in Freetown, Sierra Leone, while the third indicates his birth in Lebanon - raise questions as to what information the defendant provided to various governments when he obtained these passports. *See id*.  at 7-8;

o  Finally, the government's opposition noted that the defendant's extreme wealth "affords him opportunities and influence which make any pretrial release as proposed by the defendant problematic." *See id*.  at 8;

In addition, the government's opposition fully rebutted the defendant's claims regarding his conditions of confinement, based on conversations with management and medical personnel at the facility, which showed that the detention facility housing the defendant was, indeed accommodating the defendant's medical, dietary and religious needs.   *See id*.  at 10-14.

On May 24, 2017, at a hearing on the defendant's Motion for Pretrial Release, after hearing argument from the parties, the Court concluded that no condition or combination of conditions

would in fact ensure the defendant's appearance at future proceedings, and therefore denied the defendant's Motion.

On January 8, 2018, the defendant filed a second Motion for Pretrial Release from custody again alleging that he is not a risk of flight. *See* Dkt. 58. In this renewed motion, the defendant again asserts that the Court should release him to reside in a residence he will rent, where he would be guarded by a newly identified security company that he would hire. As with his first motion, the defendant cites a number of qualifications of this newly identified security company. The defendant again suggests that he would submit to GPS monitoring by Pretrial Services. The renewed Motion again submits that the defendant would post a $2 million bond. The one new feature of the defendant's proposed pretrial release program (aside from the newly identified security company) is the assertion that a relative by marriage of the defendant would offer his house as an additional bond to secure the defendant's release.

In addition, the defendant's renewed motion alleges that the detention facility in which he is incarcerated: (1) does not provide him with the proper diet as required by his religion; (2) that his blood pressure and weight have fluctuated; (3) that his teeth implants have fallen out and the facility does not have dental care; and (4) it is burdensome for his lawyers to travel the long distance to the detention facility to meet with him.

The government's Opposition to the Defendant's (first) Motion for Pretrial Release (Dkt. 22), incorporated herein by reference, recites the factual background of the case, as well as the procedures and standards to be used in deciding such a motion, and the government respectfully refers the Court to that pleading for that information.

## ANALYSIS

The Bail Reform Act of 1984, 18 U.S.C. 3141, et seq., provides, in pertinent part, that if a judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required . . ., such judicial officer shall order the detention of the [defendant] before trial." 18 U.S.C. 3142(e)(1). *See also* United States v. Xulam, 84 F.3d 441, 443 (D.C. Cir. 1996), United States v. Vergara, 612 F.Supp. 2d. 36, 37 (D.D.C. 2009), and United States v. Anderson, 382 F. Supp. 2d 13, 14 (D.D.C. 2005) (Bail Reform Act "provides for pretrial detention if the government establishes by a preponderance of the evidence that the defendant is likely to flee before trial if released and that no condition or combination of conditions will reasonably assure the appearance of the defendant as required") (citations omitted).

When considering whether there are conditions of release that will reasonably assure the appearance of a defendant as required, 18 U.S.C. § 3142(g) lists four factors that guide a court's detention decision: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. 3142(g). After a review of defense counsel's proposed conditions of release, an analysis of the factors listed above strongly favors the defendant's continued detention.  Moreover, a material change in circumstances has not occurred warranting the reversal of the Court's prior detention order.

As seen in the relevant procedural history set forth above, presently, the defendant proffers no significant changes in circumstance since the Court ruled on the Defendant's (first) Motion for Pretrial Release, and the facts relevant to the factors the Court must evaluate remain the same.  The nature and circumstances of the offenses charged remain serious, in that the OFAC designations

pursuant to the Global Terrorism Sanctions Regulations seek to block property and transactions between United States persons and persons who commit, threaten to commit or support terrorism, with the obvious goal of reducing the resources available to terrorist organizations. The defendant's exposure to significant jail time – an estimated Sentencing Guidelines range of 155 to 188 months of incarceration if convicted at trial – remains the same. The Government's evidence against the defendant remains very strong.[1] The defendant's extreme wealth, his lack of significant ties to the community or even to the United States, his foreign citizenship, his prior conviction involving the use of faked documents, and other factors surrounding the defendant's history and characteristics remain the same, and, as set forth above in summary form above and in detail in the government's Opposition to the Defendant's (first) Motion for Pretrial Release (Dkt. 22), militate strongly against the defendant's release.

Further, the defendant's newest proposal to create his own "house arrest" is almost identical to the proposal previously rejected as inadequate by the Court. While the new plan offers to have a relative by marriage post a house of unknown value in further support of his release, the defendant claims no close relationship to this newly identified relative, and regardless, such an offer likely pales in comparison with the defendant's vast wealth, which allows him to offer to post a $2 million bond to secure his own appearance. The defendant's other variance from his previous proposal - the identification of a different security company to supervise and secure him if released– is of no moment, since the new company appears qualitatively no different from the company identified previously.

---

[1] The defendant's (renewed) Motion for Pretrial Release states that "it has become clear that the Government lacks evidence that Mr. Tajideen provided funds to Hizballah [because] . . . [i]t has produced none despite repeated requests. This statement ignores a fact acknowledged by the defendant in his Motion to Compel Discovery filed the day before his renewed motion for the release - that such evidence is irrelevant to the crimes charged in this case.

The defendant's proposal to pay a $2 million dollar bond, as well as to rent a facility where he would be housed and hire an entire cadre of former law enforcement to oversee his release, reveal the extensive resources still available to the defendant.  As described in detail in the Government's Opposition to the Defendant's (first) Motion for Pretrial Release (Dkt. 22), the defendant's wealth is such that reliable DEA reporting indicated that a $20 million dollar reward was offered for anyone who could obtain the defendant's release from the custody of the foreign government that arrested him overseas, and later extradited him to the United States.  *See id.* at 9.

These largely unchanged factors make clear that the defendant's proposal for his pretrial release is as inadequate to assure his appearance now, as it was when the Court first considered it. As stated in the Government's Opposition to the Defendant's (first) Motion for Pretrial Release, "[i]n the face of such wealth and influence, the defendant's offer to, in essence, create his own jail by renting a facility and staffing it with "two or more" armed guards at all times falls short.  In reality, only a legitimate holding facility, administered by unbiased and otherwise accountable officials, with multiple locked doors, numerous rotating staff, video surveillance and restricted access to the facility can effectively detain – and assure the appearance of - a man of the defendant's wealth and influence."  *See id*. at 9.

## THE DEFENDANT'S CONDITIONS OF CONFINEMENT

In his renewed Motion, the defendant again claims that he is being denied adequate food, medical care and religious accommodation in his current placement at the Rappahannock Regional Jail ("the facility" or "the jail").  Based on the government's communications with jail personnel, these claims are baseless.  While the conditions of the defendant's confinement may not be to his liking, they are fully appropriate, and take into account his medical, religious and dietary needs.

The defendant claims that at the detention facility currently housing him: (1) he is unable to obtain the diet required by his religion; (2) his blood pressure and weight have fluctuated; (3) that his teeth implants have fallen out and the facility does not have dental care; and (4) it is burdensome for his lawyers to travel two hours (one hour each way) to meet with him. As with the defendant's allegations of this ilk made in his first Motion for Pretrial Release, inquiries to the detention facility reveal that the facility is providing for the defendant's medical, religious and dietary needs appropriately.

Despite the defendant's assertion that he is "unable to obtain the diet required by his religion" (Dkt. 58 at 1) the defendant's diet is appropriate for consumption by persons of the Muslim faith.  Jail personnel indicate that the defendant was started on a vegetarian diet on March 25, 2017 – the day he arrived at the facility.  At his request, on April 6, 2017, he began receiving a lacto-vegetarian diet.  No meats of any kind are included in either diet, and the entire jail facility is free of pork.

Further, the defendant has received appropriate medical and dental care, and has no apparent serious medical issues. While defense counsel claims that their client has lost approximately 20 pounds since his incarceration, due to accuracy issues with the scale used to weigh the defendant at intake, it is not possible to know exactly how much the defendant weighed when he entered the facility.   However, facility personnel indicate that on April 24, 2017, May 1, 2017, May 8, 2017, and May 15, 2017, the defendant was found to weigh either 147 or 148 pounds, and that the defendant's weight fluctuated by no more than approximately 4 pounds since that time. As such, his weight has been stable, and further is not inappropriate for a man of his height.  The defendant's blood pressure is monitored at appropriate intervals by medical personnel and is also checked when the defendant makes that request to personnel at the facility, and

appropriate treatment is available if necessary.  Though he complains that his "dental implants have fallen out and the facility provides no dental care for their replacement" the defendant was seen by a dentist when he requested such a visit some weeks ago, and staff reports that he has not requested further dental care since that time.

## **<u>CONCLUSION</u>**

WHEREFORE, for all of the foregoing reasons, the United States respectfully requests that the Court deny the Defendant's Motion for Pretrial Release.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. Bar No. 472845

By: _____/s/_____
Thomas A. Gillice, D.C. Bar No. 452336
Maia Miller, VA Bar No. 73221
Assistant United States Attorneys
Jacqueline L. Barkett, NY Bar No. 5424916
Special Assistant United States Attorney
National Security Section
United States Attorney's Office
555 4th Street NW
Washington, D.C. 20530
(202) 252-1791
thomas.gillice@usdoj.gov
maia.miller@usdoj.gov
jacqueline.l.barkett@usdoj.gov

And

DEBORAH CONNOR
ACTING CHIEF

By: _____/s/_____
Joseph Palazzo, MA Bar No. 669666
Trial Attorney
Money Laundering and Asset Recovery
    Section, Criminal Division

United States Department of Justice
1400 New York Avenue NW, 10th Floor
Washington, D.C. 20005
(202) 598-2358
joseph.palazzo@usdoj.gov

Dated: January 19, 2018

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the Government's Opposition to Defendant's Second Motion For Pretrial Release was served upon counsel for the Defendant, this 19th day of January 2018.

_____/s/_____
Thomas A. Gillice
Assistant United States Attorney