# Exhibit 1

Case 1:17-cr-00046-RBW   Document 95-1   Filed 02/20/18   Page 2 of 10
Case 1:15-cr-00706-VSB   Document 342   Filed 12/09/16   Page 1 of 48       1
GbhWsenC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
UNITED STATES OF AMERICA,

                v.                           15 Cr. 706 (VSB)

NG LAP SENG,
a/k/a "David Ng" and
JEFF C. YIN,
a/k/a "Yin Chuan,",

                                             Conference
                Defendants.
------------------------------x
                                             New York, N.Y.
                                             November 17, 2016
                                             3:30 p.m.
Before:

                HON. VERNON S. BRODERICK,

                                             District Judge

                        APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
DANIEL C. RICHENTHAL
JANIS M. ECHENBERG
DOUGLAS ZOLKIND
     Assistant United States Attorneys

HUGH H. MO
     Attorney for Defendant Ng Lap Seng
     -and-
PARK JENSEN BENNETT LLP
BY:  TAI H. PARK
     CHRISTOPHER W. GREER
     -and-
SHAPIRO ARATO LLP
BY:  ALEXANDRA A.E. SHAPIRO

DAVID E. PATTON
     Federal Defenders of New York, Inc.
     Attorney for Defendant Yin
BY:  SABRINA P. SHROFF
     ALLEGRA GLASHAUSSER
```

Case 1:17-cr-00046-RBW   Document 95-1   Filed 02/20/18   Page 3 of 10
Case 1:15-cr-00706-VSB   Document 342   Filed 12/09/16   Page 37 of 48    37
GbhWsenC

1    make that disclosure to allow defense time to make an
2    assessment about whether or not they're going to get an expert
3    and/or challenge the expert on Daubert grounds.
4               Are we ready to talk about bail?
5               And Ms. Shroff, Ms. Glashausser, you're welcome to
6    stay or you can go.  We're going to now talk about Mr. Ng's
7    bail application.  I guess the question I have is, well, we
8    might as well talk about it because it may be that we're not
9    back here again and the only thing that's going to be happening
10   is that Mr. Ng's counsel is going to file a motion to sever.
11   But as I understand it, the request is for one day a week for
12   Mr. Ng to be able to go outside, for lack of a better term.
13              The government, and again, I understand, and I think
14   it was Mr. Park's initial letter that may have referred to it
15   as reconsideration, but I think it is a separate application
16   where it's three versus one.
17              MR. PARK:  I thought he did it.
18              MR. MO:  That's all right, Judge.
19              THE COURT:  Mr. Park, way to toss your colleague under
20   the bus.
21              Let me hear from the government.  I understand the
22   nature of the government's objection when it comes to sort of
23   free to do whatever he wants to do based upon as long as the
24   Guidepost folks thinks it's OK.  Let me hear from the
25   government, and I understand the risk of flight issue.  There

Case 1:17-cr-00046-RBW   Document 95-1   Filed 02/20/18   Page 4 of 10
Case 1:15-cr-00706-VSB   Document 342   Filed 12/09/16   Page 38 of 48      38
GbhWsenC

1   has been, at least so far, Mr. Ng has complied with the terms
2   of his release.  Let me hear from the government on that, and
3   whether or not the government would propose or has thought
4   about whether there are other, to the extent there is this one
5   day granted that there are other things that could be put in
6   place that would give the government more comfort.
7            MR. RICHENTHAL:  I'll take those in order.  Our
8   concern here is twofold, and it is flight and it's also
9   violation of the other conditions.  On flight, this is
10  speculative, but any analysis of flight is speculative.  A
11  defendant who has not yet fled, the whole point is to analyze
12  the likelihood of flight and the conditions that would mitigate
13  it.  In our view, it's not appropriate to have a conversation
14  about what could happen.  There are lots of things that could
15  happen if Mr. Ng is free to go anywhere he wants, anywhere in
16  New York City at any time provided the sun is above the
17  horizon, which is what he's asking for.  A public park, a busy
18  public park, one does not have to paint a scene out of a movie
19  to imagine how Mr. Ng could quickly dash into a car or
20  disappear into a crowd.  I see your Honor smiling.
21           THE COURT:  I just want to ask how fast he is in the
22  40-yard dash.
23           MR. RICHENTHAL:  I don't know, but it doesn't require
24  a lot to block the two people that are with him when he does
25  that.

Case 1:17-cr-00046-RBW Document 95-1 Filed 02/20/18 Page 5 of 10
Case 1:15-cr-00706-VSB Document 342 Filed 12/09/16 Page 39 of 48    39
GbhWsenC

```
 1              THE COURT:  I understand that, and I don't mean to
 2   belittle the concerns and the safety concerns, quite frankly.
 3   I understand that, and I understand that concern.  That's why I
 4   asked whether there were other things that could be done, for
 5   example, and I'll just throw out, for example, it's not going
 6   to be any date that he chooses.  It's going to be a specific
 7   day of the week that will be the only day that he would be able
 8   to do it.  We would discuss and whether or not there is going
 9   to be a circumscription about what that means, about what he is
10   able to do, in other words, sort of a public park issue, or
11   something else.
12              The other thing I would say, and I think obviously the
13   Guidepost folks are very professional and the like.  I'm not
14   sure I would necessarily, and I understand their willingness to
15   sort of take on the onus of sort of assessing what he wants to
16   do and when he wants to do it, but I think it probably is best
17   to the extent it's going to happen to be that it's going to be
18   a day of the week that we choose, without, that typically would
19   be unflexible and that pretrial services would be advised both
20   of what that date is and what the intended itinerary for that
21   day is.  And so that would be, and again, I think you see where
22   I'm going with this.  Look, in the end of the day, it's one out
23   of seven days and I think with the things I've proposed, and
24   I'll hear from the government, I'm inclined to allow that.  So
25   let me hear from you with regard to that.
```

Case 1:17-cr-00046-RBW Document 95-1 Filed 02/20/18 Page 6 of 10
Case 1:15-cr-00706-VSB Document 342 Filed 12/09/16 Page 40 of 48
40
GbhWsenC

```
 1            MR. RICHENTHAL:  Two things.  First, our concern,
 2   laughter, though it may have gotten some people, is actually
 3   not just flight.  Your Honor imposed very significant
 4   communication conditions here, and in your judgment, your Honor
 5   did so reasonably and those absolutely should remain in place.
 6   It would be even easier than the speculation I just made for
 7   someone to pass Mr. Ng a note, for Mr. Ng to pass someone a
 8   note, for Mr. Ng to converse with someone in a language that
 9   the Guidepost officers do not understand and vice versa or for
10   him to receive a cell phone.  They don't speak the language he
11   speaks.  There are all kinds of scenarios here that are simply
12   not allowed under the current conditions, and it is not
13   analogous for him, for example, to go to a doctor's office,
14   which is a small enclosed room.
15            And let me add, and again, I think this may elicit
16   some laughter, but we really believe this.  The reason your
17   Honor permitted Guidepost to do what Guidepost is doing, and
18   when I say that, I'm basing it on the lengthy back and forth we
19   had whether Guidepost was authorized to use force to prevent
20   Mr. Ng from violating any of the conditions, including flight.
21   That presents a danger to other people when there are other
22   people around if they have to do that that simply is not
23   present in his apartment or a doctor's office or his lawyer's
24   office.  There are all kinds of scenarios that one could come
25   up with that are extraordinarily difficult to mitigate against.
```

```
 1   Guidepost is being paid my Mr. Ng.  Of course they're willing
 2   to do it.  So we urge your Honor to consider these kinds of
 3   scenarios -- cell phones; communications in a language they
 4   don't speak -- before doing this.
 5            MR. MO:  May I be heard, your Honor?
 6            THE COURT:  In a second.
 7            MR. RICHENTHAL:  Having said that, because we did not
 8   anticipate your Honor asking for what could be done in lieu of
 9   the request and in lieu of our request that it be denied, we'd
10   like to confer with people that are not Guidepost about this,
11   who specialize in this kind of thing before I give an answer
12   about a proposal that we still resist, respectfully, but that
13   at least we think could be more reasonable.  I just don't
14   personally have the experience, or my colleagues, to answer
15   this.
16            THE COURT:  Are you saying I'm not reasonable?
17            MR. RICHENTHAL:  I don't think I meant to suggest
18   that.
19            THE COURT:  That's fine, and I think that's fair.  I
20   mean, look, my sense was there wasn't too much back and forth
21   before the first proposal and the second proposal and in
22   between, but what I would say is this.  Obviously, and I'm
23   willing to listen to additional restrictions, it would be a
24   violation of Mr. Ng's terms of his release, and part of the
25   condition would be that Guidepost advise us, if he's having a
```

Case 1:17-cr-00046-RBW   Document 95-1   Filed 02/20/18   Page 8 of 10
Case 1:15-cr-00706-VSB   Document 342   Filed 12/09/16   Page 42 of 48                42
GbhWsenC

1   conversation with someone who he wasn't authorized to meet, in
2   other words, a random person walking down the street.  It would
3   be a violation of his conditions and he would go in, right, if
4   he has a conversation in Chinese with someone randomly on the
5   street.  I mean, if I wasn't clear on it maybe because, just
6   because he's outside doesn't change the conditions that we've
7   set for him at the apartment.  So by all means, why don't you.
8   And why don't we do this.  I think it does make sense to come
9   back here in a week.
10            MR. MO:  May I briefly be heard, your Honor?
11            THE COURT:  Yes.
12            MR. MO:  Because what the government has just stated
13  at the outset, a lot of the things that they're talking about,
14  potential flight risk, are clearly speculative.  And may I add,
15  Mr. Ng, since the Court released him under very strict
16  supervision, 24/7 Guidepost monitoring, he has been able to go
17  to the doctor's, go to the barber shop, come to my office, come
18  to court, and on any of those occasions, your Honor, Guidepost
19  has supervised him and deal with all these concerns that
20  counsel for the government has stated, people passing him
21  notes, him slipping into a car.  As we state in our letter,
22  your Honor, Mr. Ng is not kept locked up in his apartment.  He
23  goes into public space pursuant to certain conditions imposed
24  by the Court, pretrial services' advance approval, Guidepost
25  approval, supervision, and when he designates his destination.

Case 1:17-cr-00046-RBW   Document 95-1   Filed 02/20/18   Page 9 of 10
Case 1:15-cr-00706-VSB   Document 342   Filed 12/09/16   Page 43 of 48   43
GbhWsenC

1  And your Honor, everything has been complied with for almost,
2  more than a year now. And so I think that the government is
3  basically trying to imagine all these really far-fetched
4  potential flights.
5      I submit that, your Honor, in this case we're asking
6  for a very modest modification of his confinement at home,
7  given the fact that he's already allowed under certain
8  circumstances to leave his residence, and we are asking for the
9  same kind of restrictions, any kind of departure from home,
10 let's say one day a week, to go out, breathe some air. It's
11 going to be advance approval by pretrial services, notice to
12 the government so the government is aware, and we will even
13 designate where he's going; for example, he's going to a
14 restaurant. And he's not going to partake in conversations or
15 engage in conversations with strangers, and I think that
16 Guidepost certainly should be vested with their expertise,
17 concern for security, and in fact that when we made the first
18 application, your Honor, for three days, we consulted with
19 Guidepost and Guidepost felt comfortable. And in fact when we
20 made the most recent application, just one day, in light of the
21 fact that three days was rejected, we also said defer to
22 Guidepost. Guidepost has the expertise.
23     I do not think we should engage in all these highly
24 speculative types of notion of flight here. And as I point
25 out, I don't want to repeat, a lot of those issues in support

Case 1:17-cr-00046-RBW   Document 95-1   Filed 02/20/18   Page 10 of 10
Case 1:15-cr-00706-VSB   Document 342   Filed 12/09/16   Page 44 of 48      44
GbhWsenC

```
 1   of flight has been dealt with in our responsive letter, and I
 2   submit, your Honor, that Mr. Ng has no reason to leave.  Again,
 3   it's a perception on his part, the fact he's demanding a trial,
 4   he's insisting on a trial, and all these other speculative
 5   notions of him fleeing, I think, should be put to bed.
 6              THE COURT:  I realize to a certain extent it's
 7   speculative about what may or may not happen, but the risk of
 8   flight is something I need to consider, and so I understand to
 9   date, I haven't been informed of any violations of the terms of
10   Mr. Ng's release, and that's one of the reasons why I'm
11   considering the application with the additional things that
12   I've mentioned, including your not having it sort of open; it
13   will be a specific date, having pretrial in the loop, having
14   the itinerary provided to pretrial, so they know what is going
15   to happen, and obviously making clear that the conditions apply
16   when he goes out as they apply when he is in the apartment.
17   But I do think it is something we should come back here on and
18   I'll hear from the government after they've had an opportunity
19   to consult with either the agents on this case or other folks.
20              I was going to say, in fact, we got an email the other
21   day from the district executive asking if anyone was planning
22   on sitting on the 25th.  I wasn't planning on it, but why don't
23   we, because it's Thursday and Friday, why don't we come back
24   that following week on the 28th.
25              MR. RICHENTHAL:  Your Honor, we're happy to come back
```