## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 1:17-cr-0046-RBW |
| ) | |
| KASSIM TAJIDEEN and ) | |
| IMAD HASSOUN, ) | |
| ) | |
| Defendants. ) | |

### DEFENDANT KASSIM TAJIDEEN'S REPLY IN SUPPORT OF MOTION
### FOR RELIEF REGARDING CONDITIONS OF CONFINEMENT

Mr. Tajideen's detention is now in its fourteenth month. He is presumed innocent and he is being detained only to "reasonably assure [his] presence for future court proceedings in this matter." ECF No. 115 at 15. None of the proposed modifications to Mr. Tajideen's conditions of confinement would undermine that objective or unduly burden his custodians. Mr. Tajideen appreciates this Court's previous attention to his medical care while in the custody of Rappahannock Regional Jail, ECF No. 15, and respectfully requests that the Court order the necessary modifications to his conditions of confinement described in his motion and proposed order, ECF No. 126. Mr. Tajideen's motion and the requested relief are consistent with this Court's invitation to "apprise" the Court of issues with Mr. Tajideen's "medical care . . . and [whether he is receiving an] appropriate diet," so that the Court could "intervene to make sure those things are made available to him." ECF No. 24 at 26-27.

As the government recognizes, "all defendants" are entitled to "adequate medical care and an appropriate diet." ECF No. 138 at 2. The requested relief will address "recurring issues with [Mr. Tajideen's medical care and diet] at the facility where he is detained." ECF No. 126. Rather than accede to the modest relief requested and consent to this Court entering an order to

ensure appropriate meals, dental and medical care, the government proposes that Rappahannock Regional Jail and the United States Marshals Service be entrusted to address these recurring issues, ECF No. 138, which, for the past year, they have failed to do.[1] Indeed, the government expressly concedes that, if Mr. Tajideen's basic medical and dietary needs are "left to the officials of the jail and USMS," *id.* at 3, then Mr. Tajideen will never receive the dental care that he needs,[2] or an adequate diet consistent with his faith.[3] Simply put, this relief will either happen through Court intervention, or it will not happen at all.

As an initial matter, Mr. Tajideen's detention allegedly serves one purpose: to reasonably assure his appearance at court proceedings. ECF No. 115 at 15 (concluding that "pretrial detention is required" to "reasonably assure the defendant's presence for future court proceedings in this matter"). It is not meant to be punitive. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 746 (1987) (agreeing that "pretrial detention under the Bail Reform Act is regulatory, not penal"); *United States v. Hassanshahi*, 989 F. Supp. 2d 110, 113 (D.D.C. 2013) ("Our system of criminal justice embraces a strong presumption against [pretrial] detention. In our society liberty is the norm and detention prior to trial or without trial is the carefully limited exception.") (citations and internal quotations omitted). That framework should be dispositive here. None of the requested relief will undermine the stated purpose for detaining Mr. Tajideen. All of the requested relief would be readily available to Mr. Tajideen if he was not being detained by the government in advance of trial.

Furthermore, Mr. Tajideen's requested relief is not "special treatment," as the government contends. ECF No. 138 at 2. Rather, this relief is necessary to meet Mr. Tajideen's

---

[1] ECF No. 20 at 2, 10-12; ECF No. 23 at 9-10; ECF No. 133 at 1.
[2] ECF No. 138 at 2 (Defendant's request to have a dentist repair the missing front teeth that he lost while in custody "is not within the scope of what a jail would typically provide.").
[3] *Id.* ("[T]he jail has informed the government that seafood is not available to any detained defendant, because seafood is simply not included in the jail's contract for food.").

medical and dietary needs, which the government concedes it should be doing for "all defendants."

*First*, Mr. Tajideen requests to be seen by "a qualified dentist who can repair his missing front teeth." ECF No. 126-1. While incarcerated, Mr. Tajideen lost his two front teeth, which were implants, and neither the jail nor the Marshals have addressed the issue. And the government acknowledges that they will not do so without this Court's intervention. ECF No. 138 at 2. Mr. Tajideen's gums also bleed when he brushes his teeth. He needs appropriate dental care.

*Second*, Mr. Tajideen requests an adequate diet consistent with his Muslim religion. As this court is aware, Mr. Tajideen has lost significant weight while incarcerated. *See, e.g.*, ECF No. 133 at 1. To address Mr. Tajideen's religious need for a Halal diet, and to comply with Mr. Tajideen's First Amendment rights, the jail provides him with lacto-vegetarian meals that do not include meat. However, the meals provided to Mr. Tajideen cause him to experience stomach issues, and are generally insufficient and problematic. For example, beans, which are one of the primary items repeatedly provided to Mr. Tajideen, cause him to experience stomach issues. *See* ECF Nos. 23 at 9. This forces Mr. Tajideen, who only weighs approximately 145 pounds and has health concerns, into the unenviable position of complying with his religious beliefs but going without an adequate diet. Both the Constitution through the First Amendment and Congress through the Religious Freedom Restoration Act (RFRA) and the Religious Land Use and Institutionalized Persons Act (RLUIPA) protect prisoners—even those serving sentences—from having to choose between their religion and their health. *Cf. Barnett v. Rogers*, 410 F.2d 995, 1001 (D.C. Circ. 1969) (discussing how the district court did not make a finding as to whether "considerations underlying our penal system warrant the tax on conscience that the jail's food

service policies require appellants to endure") (internal quotations and footnote omitted); *see also Holt v. Hobbs*, 135 S. Ct. 853 (2015) (unanimous opinion) (discussing enactment of RFRA and RLUIPA to provide "expansive protection for religious liberty" and to avoid "substantial burden" to the exercise of religion and applying the concepts articulated in those statutes to hold that a prison grooming policy, which the prison claimed implicated security concerns, violated RLUIPA). In an attempt to obtain an adequate diet, Mr. Tajideen supplements his diet with items purchased from the canteen. For a time period, he primarily supplemented with tuna, but Mr. Tajideen discovered that the sodium in the tuna was likely putting him at medical risk. Indeed, Mr. Tajideen's constant balancing act with his diet and concerns about related health issues is a motivating concern behind his requested doctor visits, which are discussed below. To alleviate Mr. Tajideen's dietary concerns, Mr. Tajideen proposes a practical solution: (a) to have the jail provide Mr. Tajideen with seafood "as part of his meals at least once per day," and (b) to allow his counsel to "arrange Halal meals to be delivered to him and, if necessary, . . . to provide seafood for his meals." ECF No. 126-1.[4] Mr. Tajideen's appeal for seafood once a day is closely analogous to the request in *Barnett* for a full-course pork-free diet once a day and coffee three times daily. 410 F.2d at 1001. In that case, the D.C. Circuit noted:

> Treatment that degrades the inmate, invades his privacy, and frustrates the ability to choose pursuits through which he can manifest himself and gain self-respect erodes the very foundations upon which he can prepare for a socially useful life. Religion in prison subserves the rehabilitative function by providing an area within which the inmate may reclaim his dignity and assert his individuality.

---

[4] The government acts as if this accommodation is not possible because the jail's food contract, apparently, does not include seafood, but Mr. Tajideen's counsel offered to provide such seafood "if necessary." ECF No. 138 at 2. Moreover, the government, in a separate filing, has acknowledged that the jail will prepare "special meals [] when they are deemed medically necessary." ECF No. 22 at 11.

*Id.* at 1002. It is not "special treatment" for a pretrial detainee to receive an adequate diet consistent with his religious and medical needs, and providing such a diet will not place any additional burden on the jail given that Mr. Tajideen is willing, through counsel, to arrange for food to be delivered to the jail.

*Third*, Mr. Tajideen requests that he be allowed to see a doctor regularly "to monitor his weight, blood pressure, heart rate, and cholesterol[,]" and that "[t]he doctor undertake any other medical monitoring or procedures necessary to ensure Mr. Tajideen's health." ECF No. 126-1. Mr. Tajideen is sixty-three years old. He entered jail with health concerns, including his blood pressure and heart rate. As discussed above, during the fourteen months that he has spent in jail, Mr. Tajideen has lost significant weight, and he obtains a less-than-adequate diet that itself raises and exacerbates his health concerns. He needs to see a doctor regularly—ideally once per week.

*Fourth*, Mr. Tajideen requests the ability to call his family in Lebanon for thirty minutes if the regular phone system fails. ECF No. 126-1. As this Court is aware, Mr. Tajideen was seized off a plane and extradited to the United States. His immediate family is in Lebanon and, in fact, that distance from his wife, children, and grandchildren is a purported reason for his pretrial incarceration.

The government does not dispute that daily phone access is warranted, but a Court order to this effect is necessary because the regular phone system has often failed in the past. The government maintains that any issue with the phone system at the jail has been resolved, ECF No. 138 at 3; but, if anything, that development should make an order requiring a back-up plan uncontroversial. Mr. Tajideen accepts that any such non-privileged calls will be monitored, to the

extent they would be in the normal course, which was the principal concern expressed by the government. *See* ECF No. 138 at 3 n.1.[5]

## CONCLUSION

For the foregoing reasons, Mr. Tajideen's motion requesting relief regarding his conditions of confinement should be granted.

Dated: April 26, 2018

Respectfully submitted,

/s/  Steven N. Herman
William W. Taylor, III (D.C. Bar No. 84194)
Eric R. Delinsky (D.C. Bar No. 460958)
Steven N. Herman (D.C. Bar No. 987250)
ZUCKERMAN SPAEDER LLP
1800 M Street N.W. Suite 1000
Washington, D.C. 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
E-mail: edelinsky@zuckerman.com

William J. Murphy
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
Tel: (410) 332-0444
Fax: (410) 659-0436
E-mail: wmurphy@zuckerman.com

---

[5] The government also states that allowing counsel to arrange the delivery of food to the jail, or permitting Mr. Tajideen to use an office phone to make calls "raise significant security concerns." ECF No. 38 at 3. The government offers no explanation for that statement, and there is none. Indeed, other than far-fetched and unsubstantiated conjecture, the government has never offered any proof to support its assertions that Mr. Tajideen poses any risk. Nor did the government seek to detain Mr. Tajideen because he posed a danger to the community. Mr. Tajideen is a frail, sixty-three-year-old man, and he just wants to receive an adequate diet and speak with his family. Defense counsel is confident that any so-called security concerns can be addressed. For example, defense counsel has offered to arrange the delivery of food, and we are willing to work with the government and the jail to do so.

                                                                                                 _____

                                                                                               Paul G. Cassell (Utah Bar No. 6078)
                                                                                               S.J. Quinney College of Law, Univ. of Utah[6]
                                                                                               383 S. University Street
                                                                                               Salt Lake City, UT 84112-0730
                                                                                               Tel: (801) 585-5202
                                                                                               Fax: (801) 585-2750
                                                                                               E-mail: cassellp@law.utah.edu

                                                                                              *Attorneys for Defendant Kassim Tajideen*

---

[6] This address is provided for identification and contact purposes only and is not intended to imply institutional endorsement for this private representation.

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on April 26, 2018, the foregoing was served electronically on counsel of record via the Court's CM/ECF Service.

                                                        /s/ Steven N. Herman
                                                        Steven N. Herman