```
                    IN THE UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF COLUMBIA


       United States of America,     ) Criminal Action
                                     ) No. 17-CR-46
                      Plaintiff,     )
                                     ) STATUS HEARING
       vs.                           )
                                     ) Washington, DC
       Kassim Tajideen,              ) November 5, 2018
                                     ) Time:  10:00 a.m.
                      Defendant.     )
       _____

                      TRANSCRIPT OF STATUS HEARING
                             HELD BEFORE
                 THE HONORABLE JUDGE REGGIE B. WALTON
                     UNITED STATES DISTRICT JUDGE
       _____

                          A P P E A R A N C E S

       For Plaintiff:       Thomas A. Gillice
                            Luke M. Jones
                            U.S. ATTORNEY'S OFFICE
                            National Security Section
                            555 4th Street, NW
                            Washington, DC 22205
                            (202) 252-1791
                            Email: Thomas.gillice@usdoj.gov
                            Email: Luke.jones@usdoj.gov

       For Defendant:       William W. Taylor, III
                            William James Murphy
                            ZUCKERMAN SPAEDER, LLP
                            1800 M Street, NW
                            Suite 1000
                            Washington, DC 20036
                            (202) 778-1810
                            Email: Wtaylor@zuckerman.com
                            Email: Wmurphy@zuckerman.com
       _____

       Court Reporter:            Janice E. Dickman, RMR, CRR
                                  Official Court Reporter
                                  United States Courthouse, Room 6523
                                  333 Constitution Avenue, NW
                                  Washington, DC  20001
                                  202-354-3267
```

1           THE COURTROOM DEPUTY:  Your Honor, this morning, this
2    is the matter of United States of America versus Kassim
3    Tajideen.  This is criminal record 17-146.
4           Ask the parties step forward and identify yourselves
5    for the record, please.
6           MR. GILLICE:  Good morning.  Tom Gillice, along with
7    Luke Jones from the U.S. Attorney's Office.  Also with us today
8    is Jacqueline Barkett, a special in our office, and Joseph
9    Palaczo, so who is an attorney with the money laundering and
10   asset recovery section.
11          THE COURT:  Good morning.
12          MR. JONES:  Good morning, Your Honor.
13          MR. TAYLOR:  Good morning, Your Honor.  Bill Taylor,
14   with Bill Murphy, my partner, for Mr. Tajideen.  And we have
15   other colleagues from the office with us.
16          THE COURT:  Good morning.  I convened this matter to
17   make an assessment as to where we are.  I know the rulings that
18   I made on the several motions to dismiss has been apparently
19   appealed to the circuit, and I guess it's going to be some time
20   before they actually hear argument on that.  But I wanted to
21   have counsel in to find out how we should proceed in this
22   matter.
23          MR. GILLICE:  Thank you, Your Honor.  The parties
24   have been negotiating what we believe will be a plea agreement
25   between Mr. Tajideen and the government.  We have come to an

agreement on the primary terms. And it would be a C plea. And what we are going to be asking the Court to do is to, I guess, listen to the terms of the plea today. I think the defense counsel would take some comfort if the Court can indicate whether or not it would be within the realm of possibilities. If the Court is not willing to indicate that today, we, of course, understand.

But going forward from there, once we finalize all the terms, which we expect will be very soon, we would -- the defense counsel would file a motion with the District Court to return jurisdiction to this Court for purposes of the entry of a plea and the Court's consideration of whether or not to accept a C plea.

And once those two actions had occurred, if the Court were to accept the C plea, then the defendant -- or, indicate that it would accept the C plea at the appropriate time, the defendant would move fully to withdraw his motion for -- he would move to withdraw his appeal, and then at that point we could come back and actually have the plea in front of the Court.

THE COURT: Well, it's hard for me to assess what I will feel about the C agreement. But, I guess maybe if you give me some indication as to what he's accused of having done and the impact of what he did and then what the agreement is, I can have maybe some appreciation as to whether I think what is

1    being recommended is reasonable.
2             MR. GILLICE:  Very well.  So, currently, Your Honor,
3    the defendant is charged with 11 counts and most of the counts
4    are IEEPA violations that were engendered when he -- after he
5    was designated by OFAC as an SDGT.  He was on the specially
6    designated national's list.  The government's theory of the
7    case is that he was not allowed to do business with U.S.
8    persons without those U.S. persons having a license.  And our
9    case would show that he did do vast amount of business with
10   U.S. persons over the course of a number of years.
11            THE COURT:  How many years are we talking about?
12            MR. GILLICE:  2009, when he was designated, to the
13   date of the superseding indictment, which is February of 2018.
14   So during --
15            THE COURT:  Do you have an assessment of how much
16   profit he made as a result of his activity?
17            MR. GILLICE:  I don't know that I can say profit,
18   Your Honor.  I know that the parties differ on the exact
19   amount.  But the government's evidence, we believe, at trial
20   would be over $1 billion in transactions that either went
21   through banks or -- a large amount of it went through banks and
22   then a smaller percent of that were transactions that were
23   actually with U.S. persons for U.S. goods.
24            THE COURT:  And transactions for what type of goods?
25            MR. GILLICE:  So depending on the transaction, most

1  of them were commodities.  We're talking about chicken,
2  sometimes some grains, and then in one of the cases that is --
3  one of the instances that's charged in the indictment, there
4  were a number of small safes that were bought from a company in
5  California.
6        So those comprise about 36 -- I believe it's
7  approximately $36 million in transactions.  The rest, the other
8  that add up to over 1 billion are primarily financial
9  transactions.  They are uses of the U.S. financial system.  As
10 the Court knows, in order to transact business in U.S. dollars
11 when you're overseas, the money has to come and touch a U.S.
12 bank.  So part of the IEEPA rules allow for those transactions
13 to be blocked in order to cut off funding that is not believed
14 to be appropriate under the IEEPA.
15       So, most of that -- the rest of that billion dollars
16 are transactions that were in foreign-to-foreign transactions
17 that needed U.S. dollars to be completed.  And so when those
18 U.S. dollar transactions went through the U.S. financial
19 system, they are considered to be violations, assuming that all
20 of the other elements of those transactions were being met.
21       THE COURT:  And he was designated by a component of
22 the Treasury Department.  And why was that designation made?
23       MR. GILLICE:  Well, the stated purpose was that he
24 was funding -- he was a financier for Hizballah.  Now, the
25 Court will remember that we've agreed not to present evidence

1     of that at the sentencing.  We've agreed that it is merely the
2     facts of the designation, but not the underlying basis for the
3     designation that would be relevant at either a trial or at
4     sentencing in this case.
5            So, that was the reason for the designation, in
6     answer to your question.  But we would not be arguing -- in
7     fact, the terms of our the plea agreement would exclude,
8     basically, the parties from discussing that issue during
9     sentencing.
10           THE COURT:  Okay.  And what is the C agreement?
11           MR. GILLICE:  So, the C plea, Your Honor, would be
12    that the defendant would agree to serve 60 months
13    incarceration, six zero, and he would agree to pay a forfeiture
14    of approximately $50 million.  He would pay the $50 million
15    prior to his sentencing in this case.  The government would
16    agree that no fine -- the government and the parties and the
17    Court, actually, would be bound to no further fine applying to
18    the sentence.
19           The government would agree not to ask for forfeiture
20    in any greater amount than the 50 million, and would also agree
21    that it would not oppose the defendant's request that no
22    restitution be ordered in the case.
23           So we've got $50 million of forfeiture money paid
24    prior to sentencing, with an agreement in -- I think -- we
25    haven't quite come to finalize all the language with regard to

1   how that would be effectuated.  But the $50 million is the
2   forfeiture and then five years of incarceration.
3           The sentencing guidelines in this case would be 87 to
4   108 if the defendant went to trial and were -- excuse me, if
5   the defendant were to plead guilty under the sentencing
6   guidelines.  So the 60 months is lower than the guidelines, but
7   not by an exorbitant amount.
8           THE COURT:  And you would consider it appropriate to
9   go below the bottom of the guidelines based upon what factors?
10          MR. GILLICE:  Your Honor, in this case the defendant
11  has -- he would be admitting his guilt to a great number of
12  financial transactions.  And given that, given the lack of any
13  violent conduct on his behalf, we would be willing to accept a
14  plea to less than the sentencing guidelines.
15          THE COURT:  Anything from the defense?
16          MR. TAYLOR:  Yes, Your Honor.
17          THE COURT:  I mean, it seems to me that unless there
18  is something that's revealed in the presentence investigation
19  that would suggest something more than what's been indicated, a
20  60-month sentence with that amount of a fine would seem to be
21  reasonable, but --
22          MR. TAYLOR:  We agree.  I was going to perhaps
23  refresh your recollection that although this case arises out of
24  a designation in 2009, we tried mightily to get into the basis
25  for that designation because Mr. Tajideen consistently denied

1  that he was a supporter of Hizballah or had made any
2  contributions to it.  The risks to us of losing on the critical
3  legal issues, including the ones in the Court of Appeals, have
4  persuaded us to convince Mr. Tajideen, and he has agreed to
5  accept this compromise.
6            The question of a presentence report is something
7  that's going to come up, Your Honor.  Since his -- he --
8  there's no real reason for providing information to the Court
9  that would be available to the probation department, since all
10 of this is in Lebanon.  He's never lived in the United States.
11 His home is in Lebanon, he's lived elsewhere in the world.
12           We're hoping that you would agree that based upon the
13 representations and the factual information we can provide,
14 that you can dispense with the presentence report.  I know
15 that's not ripe today, but I did want to put that on the radar
16 screen because it is something that we will be -- we'll be
17 seeking.  Frankly, as soon as we can move the money, which is
18 difficult, we would like to move everything forward.
19           So there are -- there are some hiccups still to come
20 in the negotiation with the government.  We've tried to
21 persuade them to be more reasonable on certain things than they
22 have been willing to be thus far, but we're close enough I
23 think that we can represent to you that there's a high
24 likelihood that we will be back here, having asked the Court of
25 Appeals to remand.

1       So I don't know that there's more that we can provide
2   to you this morning.  But that's the basic outline.
3       THE COURT:  I don't know if I would agree to totally
4   dispense with the probation department doing at least some
5   limited check.  I don't know to what extent they would be able
6   to assess information.  For example, maybe he doesn't have a
7   record, but I still would want probation to at least confer.
8       Again, I don't know what our diplomatic relationship
9   is with Lebanon and to the extent that we would be able to
10  acquire information from Lebanon, but I still would want at
11  least a preliminary check to be made to see if there is any
12  prior history before I would make a determination as to whether
13  I think the agreement is reasonable.  Assuming there is no
14  prior criminal history and assuming there is no evidence
15  related to violence, and the government has agreed not to
16  pursue information being provided to me about Hizballah, as I
17  said, it would appear that what's been agreed to would seem to
18  be reasonable.
19      MR. TAYLOR:  I think we can satisfy you about the
20  factual information that's necessary.
21      THE COURT:  So when do you all want to come back?
22      MR. GILLICE:  Your Honor, the defense will need to
23  file a motion with the Court -- with the D.C. Circuit and will
24  need to get a response from the D.C. Circuit.  I would suggest
25  that which set approximately three weeks to allow for all that

1     to happen.
2             THE COURT:  Will that be for a status hearing or for
3     the actual plea itself?
4             MR. TAYLOR:  We would like to take a shot at getting
5     the remand done by then, if -- you know, if we can work it
6     through the Court of Appeals.
7             MR. GILLICE:  Court's brief indulgence.
8             THE COURT:  That will take us to the week of the 26th
9     of November.  And I am available that week.
10            MR. TAYLOR:  I'm not either.
11            THE COURT:  I am available.  You're not?
12            MR. TAYLOR:  I'm not.  Sorry.  The following week
13    would be great.
14            THE COURT:  The following week, I will be available
15    on the 6th of December.
16            MR. TAYLOR:  That's fine with us.
17            MR. GILLICE:  Court's brief indulgence.
18            That will work for us.
19            THE COURT:  That will have to be at 2:30.  Is that
20    good?
21            MR. GILLICE:  Very well.
22            MR. TAYLOR:  That's fine.
23            MR. GILLICE:  I just note for the Court, we don't
24    have a translator here today.  I think both the parties would
25    like, you know, for there to be one available for the plea

1    hearing.  But I believe the defense counsel is willing to waive
2    his presence for today.
3              THE COURT:  Okay.  In reference -- obviously, he has
4    a right to have a translator here for him so he understands
5    what has been discussed.  But does counsel waive --
6              MR. TAYLOR:  I conferred with Mr. Tajideen and he
7    does not require a translator for this proceeding.  I think it
8    would be wise to have a translator here for the entry of a
9    guilty plea.
10             THE COURT:  Very well.  I don't know who you work
11   with.
12             MR. TAYLOR:  We'll work with Mr. Smith about that.
13             THE COURT:  Mr. Tajideen, did you understand
14   basically what's being said here today?
15             THE DEFENDANT:  Yes, sir.
16             THE COURT:  And you waive having a translator here
17   today for you?
18             THE DEFENDANT:  Today?  Not today.
19             THE COURT:  You give up your right to have a
20   translator here today?
21             THE DEFENDANT:  I understand.
22             MR. TAYLOR:  So you need to say, I waive my right.
23             THE DEFENDANT:  Yeah, I'm okay.  I waive my right.
24             THE COURT:  You don't need a translator today?
25             THE DEFENDANT:  No.

```
 1                THE COURT:  We'll have somebody here the next time.
 2    Is that fine with you?
 3                THE DEFENDANT:  Okay.
 4                THE COURT:  Okay.  Anything else?
 5                MR. TAYLOR:  No, Your Honor.
 6                THE COURT:  Thank you.
 7                              *   *   *
```

1
2             CERTIFICATE OF OFFICIAL COURT REPORTER
3
4
5        I, JANICE DICKMAN, do hereby certify that the above
6   and foregoing constitutes a true and accurate transcript of my
7   stenograph notes and is a full, true and complete transcript of
8   the proceedings to the best of my ability.
9                    Dated this 7th day of November, 2018.
10
11
12                         /s/_____
13                         Janice E. Dickman, CRR, RMR
                           Official Court Reporter
14                         Room 6523
                           333 Constitution Avenue NW
15                         Washington, D.C. 20001
16
17
18
19
20
21
22
23
24
25