UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : |
| | : |
| KASSIM TAJIDEEN, | : |
| also known as | : |
| HAJ KASSIM, BIG HAJ, BIG BOSS, | : Case No. 1:17-CR-00046 (RBW) |
| QASIM TAJIDEEN, QASSIM TAJIDEEN, | : |
| KASSEM TAJIDEEN, KASSIM TAJ ALDINE, | : |
| KASSIM TAJ ALDIN, KASSIM TAJ AL-DIN, | : |
| KASSIM TAJ AL-DINE, and | : |
| KASSIM TAJADIN, | : |
| | : |
| Defendant. | : |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorneys, the United States Attorney for the District of Columbia and the Money Laundering and Asset Recovery Section of the Department of Justice, hereby respectfully recommends that the Court accept the plea agreement entered into by the defendant on December 6, 2018 pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C)(see ECF Dkt. # 215). If accepted by the Court, the plea agreement would require the Court to impose an agreed-upon sentence of 60 months of incarceration, impose no fine or period of supervised release, and order that the defendant pay a forfeiture of $50 million. In support of its recommendation, the United States relies on the following points, and any other such points that it may cite at sentencing.

### I. BACKGROUND

The defendant was designated by the U.S. Department of the Treasury as a Specially Designated Global Terrorist in May 2009 as a result of his provision of significant financial support to Hizballah, which was previously named a Foreign Terrorist Organization by the U.S. Department

1

of State.  The defendant's designation prohibited him from being involved in, or benefiting from, transactions involving U.S. persons or companies without a license from the Treasury Department. After his designation, Tajideen conspired with at least five other persons to conduct over $50 million in transactions with U.S. businesses that violated these prohibitions.  In addition, Tajideen and his co-conspirators knowingly engaged in transactions outside of the United States which involved transmissions of as much as $1 billion through the U.S. financial system from places outside the U.S. In March of 2017, the defendant was arrested in Morocco on an indictment that included charges of Conspiracy to Violate the International Emergency Economic Powers Act ("IEEPA") and to Defraud the United States, several substantive counts of violating IEEPA, and Conspiracy to Launder Monetary instruments.  The defendant has been detained since his extradition to the U.S. in late March of 2017.

After extensive motions practice and rulings by the Court, the Defendant filed a Notice of Interlocutory Appeal on August 22, 2018.  Thereafter, the parties reached an agreement regarding the defendant's guilty plea.  On November 5, 2018, the Court held a status hearing to discuss the proposed terms of the plea that, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), would require the Court's acceptance, and would bind the Court and the parties to its terms if the Court did, indeed, accept the plea.  In addition, the Court heard reasons that would support the parties' consent motion to waive a Pre-Sentence Report.  After the discussion, the Court indicated its impression that the parties' agreements were reasonable, assuming the defendant had no prior criminal history, there was no evidence related to the defendant's participation in violence and that the Government stood by its agreement not to pursue providing the Court with information about the defendant's relationship with Hizballah.  See  ECF Dkt. #206,  p. 9, lines 13-18. See also Id. at p.7, lines 17-21.  Thereafter, the defendant withdrew his Notice of Appeal, and the Court of Appeals for the District of Columbia Circuit remanded the case to the District Court.  On December 3, 2018, the Court granted a Consent

Motion to Waive a Full Presentence Investigation (ECF Dkt. # 208 (Consent Motion) and # 210 (Order granting Motion)).

On December 6, 2018, the Defendant entered into the plea agreement pursuant to Fed.R.Crim. Pro. 11 (c)(1)(C). The terms of the agreement provide that, if the Court accepts the plea, the defendant will be sentenced to 60 months of incarceration at sentencing, and that the defendant must pay a forfeiture of $50 million, less specified monies previously seized and credited to him, and that said payment must be made prior to the sentencing date.

The government has received confirmation that the defendant paid the United States $45,478,966.41 in cash and, per the conditions of the plea agreement, credits that defendant the remaining $4,521,033.59 as a result of prior seizures. The government confirms that it is aware of no other prior criminal history aside from the conviction in Belgium on offenses related to falsification of documents, of which the Court is already aware.[1]  The government has no evidence indicating that the defendant was personally involved in violent activities.

## II. SENTENCING RECOMMENDATION

The Government submits that the Court should accept the plea agreement and impose the sentence it requires, because the agreed-upon sentence: (1) provides a significant and appropriate degree of punishment to the defendant for his crime; (2) promotes meaningful deterrence to others who might consider committing similar offenses; and (3) provides some benefit to the defendant by allowing him an opportunity to be released earlier.

---

[1] See Govt's Opp. To Mtn for Pre-trial Release, ECF Dkt. #22, p.15 ("In 2002, the Belgian State Security Service recommended to the Public Prosecutor of Antwerp that Kassim Tajideen be prosecuted for financing terrorism, blood diamond smuggling, and money laundering. The Public Prosecutor chose to charge Tajideen with leadership in a criminal organization and money laundering, related to a scheme wherein the defendant used forged documents to avoid tariffs on exported goods. He was convicted on both charges, sentenced to approximately 2 years of confinement, ordered to forfeit approximately $10 million, and banned for leading a corporation there for 10 years.").

### A. The Sentencing Guidelines and the Current Circumstances Militate in Favor of the Court's Acceptance of the Plea Agreement Pursuant to Fed. R. Crim. P. 11(c)(1)(C)

The plea agreement in this case is appropriate given the defendant's Estimated Sentencing Guideline range and criminal history. Here, the plea agreement sets forth the parties' understanding that the appropriate Sentencing Guidelines range, taking into account the defendant's aggravating role as a leader or organizer, as well as his timely acceptance of responsibility and lack of applicable criminal history, results in an Estimated Sentencing Guideline of 87 months to 108 months. Although the agreed upon sentence of 60 months is below this range, the government submits that the defendant's age and the lack of evidence of personal involvement by the defendant in violent activities militates in favor of this somewhat reduced sentence.

### B. The Plea Agreement and the Sentence It would Require Conform with the Sentencing Factors this Court Must Evaluate in Determining an Appropriate Sentence

Pursuant to 18 U.S.C. § 3553(a), at sentencing the Court shall consider not only the nature and circumstances of the offense and the history and characteristics of the defendant, but also the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide for just punishment, to deter the defendant and others from this type of criminal conduct, and to protect the public from further crimes of the defendant. Given the defendant's conduct and his particular history, this Court should accept the plea and sentence the defendant to 60 months' imprisonment and order him to pay a $50 million forfeiture.

#### 1. The Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense.

As set forth in the detailed Statement of Offense (ECF Dkt. # 214), to which the defendant agreed under oath in Court, the defendant engaged in a prolonged series of activities that involved several other individuals and at least $50 million in transactions with U.S. companies, despite his awareness that such transactions were prohibited given his status as a Specially Designated Global

4

Terrorist. The significant punishment of 60 months' imprisonment and a $50 million forfeiture appropriately reflects the serious nature of this offense, in which the defendant violated statutes meant to deter and disrupt persons and organizations deemed by OFAC to be providing funding to terrorists. The agreed-upon, below-guidelines sentence of 60 months of incarceration also takes into account the lack of any evidence that the defendant was personally involved in violent activity.

### 2. The Need to Promote Respect for the Law and to Deter the Defendant and Others From This Type of Criminal Conduct

The federal laws prohibiting money laundering and IEEPA violations promote important policy decisions by the United States to undercut criminal and terrorist organizations by cutting off their funding. Here, the significant term of incarceration and large forfeiture amount set an appropriately high standard of deterrence, both for the defendant and for others, by highlighting the reality that even non-violent offenders like the defendant subject themselves to years of incarceration in Federal prison and hefty forfeitures based on their conduct.

### 3. The History and Circumstances of the Defendant.

The defendant is now 63 years old and will have his family's massive resources to assist him upon his release from prison. Should the Court accept the plea agreement and impose the required sentence, the defendant will have the opportunity to live many productive years outside of confinement.

**WHEREFORE**, for the foregoing reasons, the United States respectfully requests that the Court: (i) formally accept the Rule 11(c)(1)(C) plea; (ii) sentence Defendant Tajideen to 60 months imprisonment; and (iii) pronounce forfeiture as part of the criminal sentence and sign and incorporate the proposed order of forfeiture into the final judgment.

Respectfully submitted,

                        JESSIE K. LIU
                        United States Attorney
                        D.C. Bar No. 472845

By:     /s/_____
        Thomas A. Gillice, D.C. Bar No. 452336
        Luke Jones, VA Bar No. 75053
        Karen P. Seifert, NY Bar No. 4742342
        Assistant United States Attorneys
        Jacqueline L. Barkett, NY Bar No. 5424916
        Special Assistant United States Attorney
        National Security Section
        United States Attorney's Office
        555 4th Street NW, 11th Floor
        Washington, D.C. 20530
        (202) 252-1791
        thomas.gillice@usdoj.gov
        luke.jones@usdoj.gov
        karen.seifert@usdoj.gov
        jacqueline.l.barkett@usdoj.gov

and

        DEBORAH L. CONNOR
        CHIEF

By:     /s/_____
        Joseph Palazzo, MA Bar No. 669666
        Trial Attorney
        Money Laundering and Asset Recovery
          Section, Criminal Division
        United States Department of Justice
        1400 New York Avenue NW, 10th Floor
        Washington, D.C. 20005
        (202) 514-1263

Dated: August 2, 2018        joseph.palazzo@usdoj.gov